Argued and submitted September 14, peremptory writ to issue October 22, 2009

STATE OF OREGON,
*Plaintiff,*

*v.*

CHARLES BO McGEE,
*Defendant-Relator,*

*and*

CITY OF GRESHAM,
*Intervenor-Adverse Party.*

(CC 080343630; SC S056467)

220 P3d 50

John Henry Hingson III, Oregon City, argued the cause and filed the brief for defendant-relator.

Heather A. Pauley, Senior Assistant City Attorney, Gresham, argued the cause and filed the brief for intervenor-adverse party City of Gresham.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

This mandamus case arises out of a contempt proceeding in which the defendant in an underlying criminal case seeks remedial sanctions against a City of Gresham Police Officer who, as a witness in the criminal case, failed to comply with defendant's subpoena *duces tecum*. The issue before this court is whether the trial court correctly concluded that precedent from this court required that the trial court must have first ordered a witness to comply with a subpoena before it may consider contempt proceedings against that witness. We conclude that, under circumstances like those presented here, a trial court need not order compliance with a subpoena before issuing an order directing the witness to appear and answer in the contempt proceeding. Because the trial court's order was based on a faulty premise, we issue a peremptory writ of mandamus that orders the trial court to vacate its order denying defendant's motion for an order requiring the witness to appear and directs the trial court to reconsider defendant's motion. We do not decide, however, whether the trial court must issue the order to appear.

Charles Bo McGee, the relator in this mandamus proceeding, is the defendant in a criminal case in which the state has charged him with driving under the influence of intoxicants. Relator's trial was scheduled to begin on June 3, 2008. Before trial, relator filed a motion to suppress evidence. To support the motion, relator properly served a subpoena *duces tecum* on Officer Harley, one of the officers involved in relator's arrest, requiring Harley to appear for the June 3 proceedings and directing him to bring (among other things) "all manuals upon which you have been trained in how to administer standardized field sobriety tests."

On June 3, the trial court considered various pretrial motions, including relator's motion to suppress. At the pretrial hearing, relator called Harley as a witness and asked him whether he had complied with the subpoena *duces tecum* by bringing his field sobriety manuals to court. Harley stated that he had not. He testified that he no longer had the manual that he had received during his training held in Hawaii. Under further examination, however, Harley admitted that

he had failed to bring similar manuals that he had received in connection with three other training sessions.

Although Harley did not dispute that he had known that the manuals had been appropriately subpoenaed, he stated that his supervisor had told him not to comply:

> "I asked my—I showed the subpoena to my supervisor and he said to forward my, the subpoena to our legal department, and that you [relator] could obtain those through our legal department at the city."

Harley further testified that the Gresham Police Department court coordinator, who had received the subpoena initially, had not noticed the request for manuals, because the request was on the second page of the subpoena.[1]

In response to Harley's failure to comply with the subpoena, relator requested a continuance of both the trial and the suppression hearing until the subpoena had been complied with. The court set the matter over until July 1, 2008. In doing so, the court also continued the subpoena *duces tecum* until the July 1 hearing. *See* ORS 136.595(4)(a) (2007) (authorizing court to continue subpoena to future date if it "is continued orally in open court in the presence of the person subpoenaed").[2]

On June 12, 2008, the City of Gresham (city) provided relator with the manuals that relator had subpoenaed. At the July 1 hearing, the trial court found that the city had complied with the subpoena *duces tecum*. The matter was then set over for another hearing on July 24, 2008.

On July 15, 2008, relator filed a motion for an order directing Harley to appear and show cause why he should not

---

[1] A subpoena to a peace officer may be served by delivering it to an individual designated by the law enforcement agency to accept service. *See* ORS 136.595(2) (2007) (explaining process). (That statute has since been amended by Or Laws 2009, ch 364, § 2, effective Jan 1, 2010.) It appears that the subpoena at issue here was served on the Gresham Police Department court coordinator, who forwarded a copy to Harley.

[2] ORS 136.595(4)(a) (2007) has since been renumbered as subsection (3)(a) by Or Laws 2009, ch 617, § 3, effective June 26, 2009. No textual change relevant to this case accompanied the renumbering. We use the statutory citation that was in effect at the time that the subpoena was issued.

be held in contempt of court.[3] Relator asserted that Harley's failure to comply with the subpoena *duces tecum* constituted contempt of court as defined by ORS 33.015(2)(b). That statute provides, in part:

> " 'Contempt of court' means the following acts, done willfully:
>
> "* * * * *
>
> "(b)   Disobedience of, resistance to or obstruction of the court's * * * process * * *."

Relator, contending that the subpoena *duces tecum* was a form of "process" under the statute, sought remedial sanctions of $10,000, plus an award of attorney fees.

The city responded that the court should not issue an order directing Harley to appear, arguing that Harley could not be found in contempt and sanctioned, because the trial court had not ordered Harley to comply with the subpoena. The city based that argument on its reading of *State v. Burleson*, 342 Or 697, 160 P3d 624 (2007), in which this court stated:

> "The statutory definition of contempt generally establishes that there must be a *violation of a court order*, rather than limited compliance with the terms of a subpoena, for there to be a basis for a contempt sanction."

*Id.* at 707 (emphasis in original). The city also contended that the officer's failure to comply was not willful because that failure (it asserted) resulted from the mistake by the Gresham Police Department court coordinator.

Relator countered that the city's reliance on *Burleson* was misplaced, because *Burleson* applied only to grand jury

---

[3] Although relator styled his motion as seeking an order to "show cause" why Harley should not be held in contempt, we note that the words "show cause" are not found in the contempt statutes. A party seeking remedial contempt sanctions must file with the trial court "a motion requesting that defendant [contemnor] be ordered to appear[.]" ORS 33.055(2). On the filing of such a motion, the trial court "may issue an order directing the defendant [contemnor] to appear," ORS 33.055(5)(a), and no sanctions may be imposed against the alleged contemnor without first giving the contemnor the "opportunity for a hearing tried to the court," ORS 33.055(6). For purposes of this opinion, we will occasionally use the term "show cause" as a legal shorthand to refer to the order described in ORS 33.055(5)(a) requiring the contemnor to appear.

subpoenas, not to subpoenas in criminal cases. Relator also asserted that the mistake by the court coordinator was not relevant to whether Harley acted willfully in failing to comply with the subpoena.

At a hearing on July 24, the trial court denied the motion for an order to show cause, stating

"Well, I['ve] read *Burleson* and I've read the reply, [relator's] reply, and my conclusion is that *State v. Burleson* governs this case[,] and so I'm denying the motion * * *."

Relator petitioned this court for a writ of mandamus, asserting that the trial court should have granted his motion and issued an order directing Harley to appear to show cause why he should not be held in contempt of court. This court granted the city's motion to intervene as an adverse party in the case.[4] We issued an alternative writ of mandamus; however, the trial court declined to change its ruling.

We begin our analysis by providing a brief overview of the procedures applicable to subpoenas and of the statutory contempt procedure.[5] Oregon statutes set forth the procedure by which criminal defendants may subpoena witnesses. ORS 136.567 provides, in part:

"(1)   A defendant in a criminal action is entitled, at the expense of the state or city, to have subpoenas issued for not to exceed 10 witnesses within the state. A defendant is entitled, at the expense of the defendant, to have subpoenas issued for any number of additional witnesses without an order of the court. * * *

---

[4] Harley has not filed any separate appearance in this court and the state has waived its appearance.

[5] The very word "subpoena" describes the seriousness of the subpoena process: the Latin words *sub poena* mean "under penalty." *Black's Law Dictionary* 1563 (9th ed 2009). The origins of the writ often are attributed to John of Waltham, the chancery clerk in the late fourteenth century:

"Waltham created the new chancery writ by adding to the language of an older writ, *'quibusdam certis de causis'* (appear for certain reasons), the new words *'et hoc sub poena centum librorum nullatenus omittas'* (and then under penalty of a hundred pounds for failure to appear). With this *subpoena ad testificandum*, the chancellor summoned the prospective witness to appear and testify *sub poena*, or under penalty."

Rhonda Wasserman, *The Subpoena Power: Pennoyer's Last Vestige*, 74 Minn L Rev 37, 44 (1989) (footnotes omitted); *see* John Henry Wigmore, 8 *Evidence in Trials at Common Law* § 2190, 65 n 19 (John T. McNaughton rev 1961) (similarly noting).

"(2) Any subpoena that a defendant in a criminal action is entitled to have issued shall be issued:

"(a) Upon application of the defendant, by the clerk of the court in which the criminal action is pending for trial, and in blank, under the seal of the court and subscribed by the clerk; or

"(b) By an attorney of record of the defendant, and subscribed by the attorney."

The required form for a subpoena issued by a criminal defendant's attorney states that the witness is "hereby commanded to appear" before the trial court "in the name of the state of Oregon." *See* ORS 136.575(6) (so stating). A subpoena additionally may require the production of books, papers, or other documents—thus becoming what is known as a subpoena *duces tecum*—by adding appropriate text directing the witness that he or she is " 'required * * * to bring' " those documents. ORS 136.580(1).[6]

Here, based on Harley's failure to comply with the subpoena, relator sought contempt sanctions—specifically, a "remedial sanction" of $10,000, plus attorney fees. By statute, "remedial sanctions" include sanctions intended "to compensate for injury, damage or costs resulting from a past or continuing contempt of court." ORS 33.015(4).[7] A party aggrieved by an alleged contempt may initiate contempt proceedings for remedial sanctions by filing a motion. ORS 33.055(2)(a).[8] The motion must be accompanied by "supporting documentation or affidavits sufficient to give defendant

---

[6] ORS 136.580(1) provides:

"If books, papers or documents are required, a direction to the following effect shall be added to the form provided in ORS 136.575: 'And you are required, also, to bring with you the following: (describing intelligibly the books, papers or documents required).' "

[7] A "remedial sanction" is distinct from a "punitive sanction," as ORS 33.015 defines those terms:

"(3) 'Punitive sanction' means a sanction imposed to punish a past contempt of court.

"(4) 'Remedial sanction' means a sanction imposed to terminate a continuing contempt of court or to compensate for injury, damage or costs resulting from a past or continuing contempt of court."

[8] ORS 33.055 provides, in part:

"(1) Except as otherwise provided in ORS 161.685, proceedings to impose remedial sanctions for contempt shall be conducted as provided in this section.

[contemnor] notice of the specific acts alleged to constitute contempt." ORS 33.055(4). Once the motion has been filed, "[t]he court may issue an order directing the defendant [contemnor] to appear." ORS 33.055(5)(a). Remedial sanctions may be imposed only after the alleged contemnor has had an opportunity to be heard (unless the alleged contemnor waives the hearing). ORS 33.055(6).

Two statutes establish that a trial court may hold a witness in contempt for disobeying a subpoena. First, the statutory definition of contempt includes disobedience of a subpoena in a criminal case. As we noted earlier, ORS 33.015(2)(b) defines contempt to include the willful "[d]isobedience of * * * the court's * * * process." In criminal cases, a subpoena is one form of process. *See* ORS 136.555 ("The process by which the attendance of a witness before a court or magistrate is required is a subpoena.").[9]

Second, the statutory definition of "contempt of court," ORS 33.015(2), is not limited to disobedience to process or court orders; it applies to a number of other willful acts, including:

"(e) Violation of a statutory provision that specifically subjects the person to the contempt power of the court."

In this case, ORS 136.600 makes ORCP 55 G applicable to criminal proceedings.[10] ORCP 55 G states, in part:

"(2) The following persons may initiate the proceeding or, with leave of the court, participate in the proceeding, by filing a motion requesting that defendant be ordered to appear:

"(a) A party aggrieved by an alleged contempt of court.

"(b) A district attorney.

"(c) A city attorney.

"(d) The Attorney General.

"(e) Any other person specifically authorized by statute to seek imposition of sanctions for contempt."

[9] The term "process" is not defined by the contempt statutes. Generally, it "means a warrant, writ, order, mandate, or other formal writing, issued by some court, body, or official having authority to issue process. * * * Any writ is process, as the two terms are interchangeable." 62B Am Jur 2d *Process* § 1 (2005) (footnote omitted). *See also Black's Law Dictionary* 1325 (9th ed 2009) ("process" is "[a] summons or writ, esp. to appear or respond in court").

[10] ORS 136.600 provides, in part: "The provisions of * * * ORCP * * * 55 E and G apply in criminal actions, examinations and proceedings."

"Disobedience to a subpoena or a refusal to be sworn or answer as a witness may be punished as contempt by a court before whom the action is pending or by the judge or justice issuing the subpoena."

*Id.*

As noted earlier, the trial court, relying on *Burleson*, concluded that a court order was necessary before it could consider contempt sanctions. We turn to a discussion of that case.

In *Burleson*, a witness before the grand jury had failed to comply with a prosecutor's subpoena *duces tecum.* The trial court denied both the state's motion to compel and the state's motion to hold the witness in contempt. The state then sought mandamus. This court concluded that, in the grand jury context, a trial court must first order a witness to comply with a subpoena before imposing contempt sanctions. *Id.* at 707-08 (listing required steps). The reasons for so concluding, however, were specific to subpoenas to appear before a grand jury. This court first explained that, "[a]lthough the grand jury is related to the judicial branch, it is not a court, and * * * that observation has important implications for this case." *Id.* at 704. Further, a grand jury is the final arbiter of whether to press for the production of evidence; if a grand jury chooses not to press a witness for an answer to a question—perhaps because the grand jury was satisfied with the witness's reasons for not answering, or because it concluded that it already had enough information to make its decision—the district attorney could not ask a trial court, purportedly on behalf of the grand jury, to require the witness to answer. *Id.* at 705-06. The court went on to explain that the statutory definition of contempt found in ORS 33.015(2) was largely inapplicable in the grand jury context:

"Most of the foregoing instances of contempt [set out in ORS 33.015(2)] require a violation of a court order or other form of judicial authority. However, a grand jury subpoena or other form of grand jury request issued in the name of the district attorney is not a court order, *nor does it represent some other form of judicial authority for purposes of ORS 33.015(2)*."

*Id.* at 707 (emphasis added). In a later footnote, this court reiterated the distinction between grand jury subpoenas and "regular" subpoenas, with specific reference to the contempt authorization in ORCP 55 G:

> "ORCP 55 G, operating in conjunction with ORS 136.600, also does not apply to this proceeding. That rule applies, by its terms, to instances in which a judge or justice issued the subpoena, *or when an action is pending before a court.* It does not purport to address grand jury proceedings."

*Id.* at 709 n 3 (emphasis added).

The reasoning of *Burleson* thus does not apply more broadly to subpoenas in ongoing criminal cases. Although the grand jury subpoena in *Burleson* did not represent "some * * * form of judicial authority for purposes of ORS 33.015(2) [defining contempt]," *id.* at 707, we have already explained that a subpoena in a criminal case is one form of "the court's * * * process" referred to in ORS 33.015(2)(b). And, although the grand jury subpoena in *Burleson* was not subject to ORS 136.600 or ORCP 55 G, *id.* at 709 n 3, we have explained that ORS 136.600 and ORCP 55 G do apply to subpoenas issued in criminal cases; thus, disobedience of such subpoenas falls within ORS 33.015(2)(e), the definition of contempt that incorporates other statutory provisions. The trial court's reliance on *Burleson* thus was misplaced.

From the foregoing analysis, we conclude that the trial court erred when it held, as a matter of law, that it could not issue the order directing Harley to appear and show cause without first having issued an order requiring Harley to comply with the subpoena. Both ORS 33.015(2)(b) and ORCP 55 G provided the trial court with authority to issue the order directing Harley to appear and answer the contempt proceeding, based on Harley's failure to comply with the subpoena.

The final question before us involves the appropriate disposition that this court should make on mandamus. Relator contends that we should order the trial court to issue an order directing Harley to appear and show cause in the contempt proceeding. For reasons that we shall explain, however, we decline to do so.

A party commits contempt of court if the party commits one of the acts identified in ORS 33.015(2)(a) - (e), and does so willfully. ORS 33.015(2). A party who seeks remedial sanctions for that contempt must file a motion accompanied by documentation or affidavits that provide sufficient notice to the alleged contemnor of the acts purporting to constitute the contempt. ORS 33.055(2), (4). Here, it is undisputed that relator complied with the statutory requirement, *i.e.*, he filed the required motion and affidavit that would *justify* the trial court in issuing an order directing Harley to appear and show cause why he should not be held in contempt for failing to comply with the subpoena.

That said, the trial court is not *required* to issue an order to appear and show cause, because there may be reasons that, although the motion and affidavit are in proper form, they do not satisfy legal requirements. *See* ORS 33.055(5)(a) (trial court "may" issue order to show cause). In this case, for instance, the trial court concluded (albeit incorrectly) that an order compelling compliance with the subpoena *duces tecum* was a necessary prerequisite to the issuance of an order directing the witness to appear and show cause. Although that conclusion was wrong, we do not believe it is appropriate for us to decide, in the first instance, whether other arguments asserted by Harley and the city do or do not constitute legally cognizable justifications or defenses to the issuance of an order to appear and show cause or to the determination of contempt or sanctions. We conclude that we should do no more than vacate the order of the trial court denying relator's motion for an order to appear and show cause, leaving it for the trial court on remand to reconsider the matter under the appropriate legal standard, and, having done so, to determine whether an order to appear and show cause should issue.

Put differently, we today hold only that the trial court has the authority to grant the motion for an order directing Harley to appear and show cause based on his acknowledged failure to comply with the subpoena. We express no opinion as to whether the trial court here should issue the order or whether, if it does, the trial court ultimately should hold Harley in contempt.

Peremptory writ to issue.