No. 44      October 23, 2025      407

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Adverse Party,*

*v.*

AUSTIN ADRIAN WALL,
*Defendant-Relator.*

(CC 24CR59786) (SC S071649)

En Banc

Original proceeding in mandamus.*

Argued and submitted June 25, 2025.

Brook Reinhard, Reinhard Law, Eugene, argued the cause for defendant-relator. Matthew L. Watkins, Matthew Watkins Attorney at Law LLC, Eugene, filed the briefs for defendant-relator. Also on the brief was Brook Reinhard, Reinhard Law, Eugene, and Rian Peck, Visible Law LLC, Portland.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the brief for plaintiff-adverse party. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Daniel C. Silberman, Oregon Criminal Defense Lawyers Association, Salem, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association. Also on the brief were Stacy M. Du Clos, and Amy Potter.

JAMES, J.

The alternative writ of mandamus is dismissed.

----------------

* On petition for writ of mandamus from an order of Douglas County Circuit Court, Steve Hoddle, Judge.

**JAMES, J.**

This mandamus action arises out of relator's criminal prosecution—specifically, it concerns a dispute between relator and the state as to his testimony before the grand jury. Various motions were filed on this issue, but many were stayed and not ruled upon. The single ruling before us is the trial court's denial of relator's motion for an order requiring that he be allowed to appear in person before the grand jury, as opposed to by videoconference. As we will explain, the manner of witness presentation before the grand jury is determined, at least in the first instance, by the grand jury itself—not unilaterally controlled by either the prosecutor or the defendant. Here, the trial court did not have a non-discretionary obligation to order relator's in-person appearance. Therefore, mandamus is not appropriate, relator is not entitled to the relief he seeks, and we dismiss the alternative writ.

## I.  BACKGROUND

The state initially charged relator with second-degree murder, ORS 163.115, through a district attorney's information. Relator, through counsel, notified the prosecutor that he wished to invoke his right, under ORS 132.320(12)(a), to testify before the grand jury. That statutory provision provides:

> "A defendant who has been arraigned on an information alleging a felony charge that is the subject of a grand jury proceeding and who is represented by an attorney has a right to appear before the grand jury as a witness if, prior to the filing of an indictment, the defense attorney serves upon the district attorney written notice requesting the appearance."

The prosecutor informed relator that she would only allow him to appear before the grand jury remotely and would not allow him to appear in person. ORS 132.320(5) permits the grand jury to receive testimony remotely:

> "A grand jury may receive testimony of a witness by means of simultaneous television transmission allowing the grand jury and district attorney to observe and communicate with the witness and the witness to observe and communicate with the grand jury and the district attorney."

Relator moved the trial court for an order asking for a single form of relief: that it "require that [relator] be allowed to appear in person before the grand jury." Relator argued that he had an absolute statutory and constitutional right to an in-person appearance. The trial court denied relator's motion, reasoning that it had no authority to determine whether a defendant could testify before the grand jury in person, because it had no authority to "dictate" how the prosecutor carried out grand jury proceedings:

> "So, I don't believe—sort of just kind of going through it, I don't believe that I have the authority to determine how a witness is called or how the grand jury proceedings are going to be done. And so, I do—I do believe that he has a constitutional right to appear. It doesn't—while there may be some—I don't think I have the authority to determine whether or not he can appear in person or not in person, I do think that there may be some minimal prejudicial effects via video. * * *

> "And so, I don't * * * think that the Court has the ability to dictate how the grand jury—how the—how the D.A.'s Office decides the process for the grand jury, other than assuring that [relator's] rights are upheld.

> "And so, I'm not going to order the D.A.'s Office to allow him to testify in person."

Following that ruling, relator sought a stay of the grand jury proceedings, pending a petition for mandamus. The state objected:

> "But staying the court proceedings, I think, is different than saying [the] grand jury can't hear the case.

> "I'm not sure what would prevent the State from even filing, you know, a new case on a grand jury indictment for these same charges as well. So, I don't think that staying the proceedings should or would affect the grand jury schedule."

The trial court stayed the court proceedings, but expressed uncertainty as to whether it had the power to stay the grand jury proceedings:

> "Well, I—to be clear, I do think it's appropriate to stay the proceedings.

"Now, I'm not saying, because I—frankly, I don't know. But I'm not saying that that stays grand jury or doesn't stay grand jury. And so I am going to stay the proceedings. I do think it's appropriate. I do think it's an issue of first impression. I do think it's important that the appellate courts, if they're willing, do shed some sort of guidance on this issue. And so I will stay the proceedings."

The next day, relator's counsel observed that the grand jury proceedings were continuing and filed an objection. That objection, among other issues, was the subject of a subsequent hearing, where the court again indicated that it was uncertain whether its order staying the court proceedings could have any effect on the grand jury proceedings:

"[RELATOR'S COUNSEL]: That's fine, Your Honor. If it's at all helpful, since—the Court mentioned yesterday that the Court wasn't clear—and admittedly, I wasn't sure, I didn't have authority at the time on whether a motion for a stay does pause grand jury, Your Honor.

"* * * * *

"So, I have several examples if you want citations. But I think it is within the Court's purview to order that [the] grand jury be stayed. So, I am asking that that be within the ambit of the Court's order. I know that was an open question yesterday.

"[THE COURT]: Well, I mean, I think I guess I just didn't decide. I said the case is stayed, period. *** And what the legal effect of that is, is sort of, it is what it is, and, you know, I mean, so—

"[RELATOR'S COUNSEL]: Okay. Thank you."

At that point, relator filed a series of motions, including a motion to dismiss the indictment that the grand jury returned after the trial court had stayed the case, and a separate motion to set aside the indictment for a failure to follow the grand jury statutes. Finally, to enable the court to consider those motions, relator filed a separate motion to lift the stay of the trial court proceedings. The state objected, and the trial court denied the motion to lift the stay, noting from the bench, "I'm not going to remove the stay. *** [W]hen this case resumes, however it resumes, then we can litigate whatever motions are out there."

Relator petitioned this court for a writ of mandamus, seeking two separate forms of relief in the petition. First, relator sought an order "[c]ommanding the trial court [to] vacate its earlier order and to allow defendant to appear in person to testify at grand jury." Second, relator sought an order "to vacate the existing grand jury proceeding held in violation of the trial court's order of a stay." This court issued an alternative writ and set the matter for briefing and argument.

## II.   ANALYSIS

We begin by clarifying what is, and is not, before us. As we understand it, the trial court declined to lift the stay of the trial court proceedings to consider relator's most recent motions challenging what had occurred at the grand jury and the resulting indictment. Accordingly, those motions have not been ruled upon by the trial court and are not before us. The trial court indicated it would take up those matters after our decision on mandamus.

The ruling on mandamus is the trial court's denial of relator's motion for an order "requir[ing] that [he] be allowed to appear in person before the grand jury." In opening briefing before this court, relator advanced the single argument that his consent to remote appearance is required and that, absent that consent, he has an absolute statutory right to an in-person appearance before the grand jury. For relator, as expressed in his opening brief, the text, context, and legislative history of the phrase "a right to appear before the grand jury," as used in ORS 132.320(12)(a), mean a right to an in-person appearance. In briefing and argument, relator did not advance the second claim in his petition that the trial court erred in failing to include grand jury proceedings in its order to stay.

In briefing, relator writes that this case "presents the question whether prosecutors have unilateral, unreviewable power to force a defendant to testify remotely." At its core, relator's narrow argument on mandamus is that prosecutors do not have "unilateral" power to dictate the mode of a defendant's grand jury testimony; instead, defendants have that "unilateral" power. As we explain further,

the notion that either the prosecutor or the defendant has a unilateral right to control the manner of testimony is inconsistent with the nature of grand juries and the statutory scheme.

A. *The Role of the Grand Jury*

Unless a criminal defendant waives the right, the Oregon Constitution provides that an individual may be charged with a felony only upon either indictment or a preliminary hearing following the issuance of an information. Or Const, Art VII (Amended), § 5(3) - (5). Either mechanism—an indictment, resulting from a grand jury inquiry, or a preliminary hearing—provides a check on the power of the executive. "Although the role of the grand jury has developed over centuries and its origins are somewhat obscure, * * * its function as an accusatory body serves a crucial role in protecting individual liberties." *State v. Burleson*, 342 Or 697, 703, 160 P3d 624 (2007). It is "an institution in which a group of ordinary citizens must approve of the initiation of the state power to accuse citizens of major crimes." *Id.* Consequently, it "serves as a brake on the state's potential abuse of the accusatory process." *Id.*

We see this in the way in which the grand jury is convened. It is the *court* that draws grand jurors "from the jurors in attendance upon the circuit court at a particular jury service term." ORS 132.010; *see also* ORS 132.020 (describing duties of the court in empaneling the grand jury); ORS 132.030 (permitting judge or clerk of the court to excuse a grand juror from service); ORS 132.050 (requiring the court to appoint a foreman and an alternate foreman of the grand jury); ORS 132.060 (requiring administration of grand juror oaths "under the direction of the court"); ORS 132.070 (requiring the court to charge the grand jury and "give it such information as the court deems proper concerning the nature of its powers and duties").

The court resolves disputes about the grand jury proceedings, advises the grand jury on the law, and performs other functions with respect to the grand jury. *See* ORS 132.370(1) ("When the grand jury is in doubt whether the facts, as shown by the evidence before it, constitute a

crime in law or whether the same has ceased to be punishable by reason of lapse of time or a former acquittal or conviction, it may make a presentment of the facts to the court, without mentioning the names of individuals, and ask the court for instructions concerning the law arising thereon."); ORS 132.070 (the court charges the grand jury and gives it "such information as the court deems proper concerning the nature of the [grand jury's] power and duties"); ORS 132.090(2) - (3) (the court may permit parents, guardians, guards, medical or other special attendant or nurse or qualified interpreters to be present in the grand jury room); ORS 132.250(2)(b) (the court may appoint and permit a certified court reporter to attend all proceedings of the grand jury); ORS 132.320(3) (the court may authorize the grand jury to receive an affidavit of a witness after good cause has been shown for the witness' inability to appear); and ORS 132.120 (the court discharges or continues the grand jury in session for such period of time as the judge deems advisable).

District attorneys—as executive agents—do not have statutory authority to unilaterally control, limit, or dictate the grand jury's inquiry. Rather, the grand jury has certain prerogatives of its own. ORS 132.100, for example, provides that "[t]he foreman of the grand jury or, in the absence of the foreman, any other grand juror shall administer an oath to any witness appearing before the grand jury." ORS 132.310 provides that grand juries "inquire into crimes." ORS 132.320(9) provides that, "when [the grand jury] believes that other evidence within its reach will explain away the charge, it should order such evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses." Indeed, ORS 132.320 repeatedly describes the grand jury as conducting an "investigation." When grand juries inquire with the court about the law, the presence of the district attorney is not even statutorily required. *See* ORS 132.370(3) ("A presentment is made to the court by the foreman in the presence of the grand jury.").

District attorneys do have an important role. They present evidence, examine witnesses, and "may submit an indictment to the grand jury in any case when the district

attorney has good reason to believe that a crime has been committed which is triable within the county." ORS 132.330. But the grand jury is free to investigate crimes on its own. ORS 132.350(1) provides that, "[i]f a grand juror knows or has reason to believe that a crime which is triable in the county has been committed, the grand juror shall disclose the same to the fellow jurors, who may thereupon investigate the same." Further, the grand jury is empowered to direct the district attorney to prepare "indictments or presentments for it and attend its sittings to advise it in relation to its duties or to examine witnesses in its presence." ORS 132.340; *see also* ORS 8.670 (requiring district attorneys to "attend upon and advise the grand jury when required"); ORS 132.250(1) (requiring district attorney to ensure that grand jury proceedings are recorded); ORS 132.260(3) (requiring district attorney to maintain recordings).

So understood, district attorneys—as the state correctly acknowledges before this court—"ct as agents of, and advisors to, the grand jury." It follows that district attorneys have no "unilateral" control over the method and manner by which the grand jury hears from witnesses. Likewise, defendants do not have "unilateral" control. Relator's argument to the contrary is that the use of the phrase "appear before the grand jury" in ORS 132.320(12) can mean only appearance in person, unless the defendant consents to something else. That argument is unpersuasive.

Applying our usual statutory interpretive model derived from *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), we consider the text, context, and legislative history of that phrase. Textually, the word "appear," as used in ORS 132.320(12) means "to come formally before an authoritative body; *specif* : to present oneself formally as plaintiff, defendant, or counsel." *Webster's Third New Int'l Dictionary* 103 (unabridged ed 2002). Persons have long been permitted to "appear" in legal proceeding in a multitude of ways—including such ways as phone (and now video) conference, through counsel, through previously recorded testimony, by affidavit, *or* in person. Thus, the use of the term "appear" does not uniquely suggest an in-person appearance.

Neither does statutory context support relator's interpretation. First, ORS 132.320(5) explicitly permits the grand jury to receive testimony via electronic transmission. We observe that ORS 132.100 requires the administration of an oath "to any witness *appearing* before the grand jury." (Emphasis added.) Similarly, ORS 132.260(1) requires the recording of "all testimony given before the grand jury," including the "name of each witness *appearing* before the grand jury," and "[e]ach question asked of, and each response provided by, a witness *appearing* before the grand jury." (Emphases added.) Given that ORS 132.320(5) explicitly authorizes at least nondefendant witnesses to testify "by means of simultaneous television transmission," relator's reading of "appearance" in ORS 132.320(12) as being appearance "in person" is incompatible with how that term is used in other parts of the statute.

Finally, our review of the legislative history of ORS 132.320(12) does not support the conclusion that the legislature intended to create an absolute right of a criminal defendant to appear before a grand jury in person. ORS 132.320(12) originated as Senate Bill (SB) 825 (2015), which was almost entirely discussed in conjunction with the larger Senate Bill (SB) 822 (2015), concerning grand jury recordation. Most of the testimony related to SB 822, and there was very little discussion of SB 825. However, the stated purpose of SB 825 was to permit a defendant to "head off charges resulting from a mistake or complicated circumstances." Video Recording, Senate Committee on Judiciary, SB 825, Mar 31, 2015, at 10:39 (statement of Sen Kim Thatcher), https://olis.oregonlegislature.gov (accessed Oct 13, 2025). Nothing in the history of SB 825 evidences any legislative intent to restrict the discretion of the grand jury over the form of witness testimony. And more pointedly, nothing evidences any legislative intent that ORS 132.320(12) would override, or have any limiting affect upon, the discretion afforded to grand juries under ORS 132.320(5) to receive testimony via electronic transmission.

In short, neither text, context, nor legislative history support the idea that ORS 132.320(12) confers upon a criminal defendant "unilateral" control over the form and

manner of their appearance before the grand jury. As noted, ORS 132.320(5) provides that "[a] grand jury may receive testimony of a witness by means of simultaneous television transmission allowing the grand jury and district attorney to observe and communicate with the witness and the witness to observe and communicate with the grand jury and the district attorney." That decision—whether to receive testimony from a witness in person or remotely by transmission—belongs, at least in the first instance, to the grand jury itself.[1] It can be informed of its power to decide, either by the court, the district attorney, or both. *See, e.g.*, ORS 132.070 ("When the grand jury is formed, the court shall charge it and give it such information as the court deems proper concerning the nature of its powers and duties * * *."); ORS 132.340 (district attorneys have the responsibility to "advise [the grand jury] in relation to its duties"). Ultimately, if it is necessary, the grand jury is always free to seek guidance from the court.

B.  *Appropriateness of Mandamus*

"Mandamus is an extraordinary remedy and serves a limited function." *Lindell v. Kalugin*, 353 Or 338, 347, 297 P3d 1266 (2013) (internal quotation marks omitted). ORS 34.110 governs the issuance of a writ and provides, in part:

"A writ of mandamus may be issued to any inferior court * * * to compel the performance of an act which the law specially enjoins * * *; but though the writ may require such court * * * to exercise judgment, or proceed to the discharge of any functions, it shall not control judicial discretion."

Generally, mandamus is not a vehicle for controlling discretion. *HotChalk, Inc. v. Lutheran Church-Missouri Synod*, 372 Or 249, 255-56, 548 P3d 812 (2024).

As we reiterated in *HotChalk*,

"we assess whether the trial court had a legal duty to act in a certain way. *State ex rel. Maizels v. Juba*, 254 Or 323, 327, 460 P2d 850 (1969) ('Generally, the court has said that when the facts are not in dispute and there is a clear rule of law requiring the matter to be decided in a certain way, mandamus will lie.'). Accordingly, mandamus is appropriate

---

[1] The manner in which the grand jury makes that decision and the extent, if any, to which that decision is subject to review by the trial court, is not before us in this proceeding. We therefore express no opinion as to those matters.

to review only obligatory—not discretionary—action. *See, e.g.*, *State ex rel. Ricco v. Biggs*, 198 Or 413, 421-22, 255 P2d 1055 (1953), *overruled on other grounds by Maizels*, 254 Or 323 ('It has become hornbook law in this state that the writ of mandamus cannot be used as a means of controlling judicial discretion, nor as a substitute for appellate review. The statute restricts its use to instances involving the performance of an act which the law specially enjoins. Mandamus will never lie to compel a court to decide a matter within its discretion in any particular way.')".

*Id*. However, mandamus relief may be appropriate when "the trial court's decision amounts to 'fundamental legal error' or is 'outside the permissible range of discretionary choices'" available. *Lindell*, 353 Or at 347 (quoting *State ex rel. Keisling v. Norblad*, 317 Or 615, 623, 860 P2d 241 (1993)).

        As previously discussed, relator's argument is that the decision to testify in person is solely relator's. That is incorrect, for the reasons previously stated. The manner and form of receiving witness testimony is a decision that belongs, at least in the first instance, to the grand jury. On this record, the trial court did not have a nondiscretionary obligation to order defendant to be allowed to appear in person. Accordingly, relator is not entitled to the relief he seeks.

        The alternative writ of mandamus is dismissed.