Argued and submitted December 8, 2011, reversed and remanded
February 27, 2013

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## CHARLES BO McGEE,
*Defendant-Respondent.*

Multnomah County Circuit Court
080343630; A146296

297 P3d 531

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

John Henry Hingson III argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

In this criminal prosecution for driving under the influence of intoxicants (DUII), ORS 813.010(1), the state appeals a pretrial order of dismissal entered after the trial court granted defendant's motion to dismiss for lack of a speedy trial. ORS 135.747. We review for errors of law, *State v. Johnson*, 339 Or 69, 82-87, 116 P3d 879 (2005), and reverse and remand.

## I.  OVERVIEW

On March 28, 2008, a Gresham police officer stopped defendant for a traffic violation. While processing the violation, the officer became suspicious that defendant was intoxicated and called a second officer, Harley, to conduct a DUII investigation. Harley came to the scene, observed defendant, and conducted field sobriety tests. Based on his observations and defendant's performance on the tests, Harley arrested defendant.

After the state charged defendant with DUII, defendant moved to suppress evidence that Harley obtained during his investigation. Defendant served a subpoena *duces tecum* on Harley requiring him to attend the hearing on the motion to suppress and to bring certain documents with him. Harley attended the hearing but failed to bring most of the subpoenaed documents. The hearing was continued for a month and, by that time, Harley had provided defendant all the requested documents. Nevertheless, defendant asked the trial court to initiate a proceeding to hold Harley in contempt for his failure to bring all of the subpoenaed documents to the motion to suppress hearing and for certain comments Harley had made at the hearing in response to questioning by defendant. Defendant believed that Harley's actions constituted contempt of court and reflected the existence of an antidefense bias. Defendant sought to have Harley found in contempt so that, in the DUII trial, he could use the finding as evidence of Harley's bias. The trial court denied defendant's request that it initiate a contempt proceeding against Harley, and defendant sought mandamus relief from the Supreme Court. The Supreme Court vacated the trial court's order and remanded for reconsideration.

On reconsideration, the trial court again denied defendant's request that it initiate contempt proceeding against Harley.

Because of delay resulting from the contempt proceeding, the related mandamus action, stays in the trial court sought by defendant, and other causes, defendant had still not been brought to trial over two years after he had been charged with DUII. Defendant moved to dismiss, arguing that he had not been brought to trial within a reasonable time as required by ORS 135.747. The trial court granted defendant's motion, and the state appeals.

ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Review of a trial court's decision on a motion to dismiss brought under ORS 135.747 entails a two-step analysis. First, we determine the total amount of delay and subtract from that total any periods of delay that occurred "upon the application * * * or by the consent of the defendant." Second, we determine whether the remaining period of delay is reasonable. *State v. Glushko/Little*, 351 Or 297, 305, 266 P3d 50 (2011). In this case, the parties' arguments implicate both of those analytical steps, namely, first, whether certain periods of delay were "upon the application * * * or by the consent of the defendant" within the meaning of ORS 135.747; and second, whether the remaining period was reasonable under the circumstances of this case.

## II. ANALYSIS

A. *Total period of delay*

We first calculate the total period of delay, which begins when a defendant is charged and ends on the final date set for trial. *Johnson*, 339 Or at 93; *State v. Garcia/ Jackson*, 207 Or App 438, 444 n 3, 142 P3d 501 (2006). In this case, the total period of delay begins on March 31, 2008, when the state filed an information charging defendant with one count of misdemeanor DUII and ends on the final trial

date, July 14, 2010. Thus, the total period of delay in this case was 835 days, or approximately 27.5 months.

B. *Procedural history; identification of subsidiary periods of delay*

In order to determine which, if any, periods of delay defendant applied for or consented to, we set out the procedural history in detail, focusing on the various subsidiary periods of delay.

1. *Defendant's first motion for trial setover*

Defendant was charged with DUII on March 31, 2008, and his trial was initially set for May 28, 2008. Defendant moved for a setover, and the trial date was continued to June 3, 2008.[1]

---

[1] Defendant notes that, in ruling on his speedy trial motion, the trial court stated, "I do accept [defense counsel's] recitation of the dates and what happened on those dates. I've looked through the transcript, and *** his summary is consistent with what I'm reading[.]" He argues that, by that statement, the trial court found facts that are binding on us on appeal and, further, that inferences flowing from those facts are binding on us on appeal. We are bound by a trial court's findings of historical fact when those facts are supported by constitutionally sufficient evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). In the absence of express findings, we generally presume that the trial court decided disputed factual issues in a manner consistent with the ultimate conclusion that it reached. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We are uncertain to what extent the trial court intended to adopt the facts stated in defendant's motion beyond accepting that the motion accurately reflected certain dates and what happened on those dates. That adoption does not relieve us from the duty to examine the procedural record for evidence of what occurred. To the extent that defendant argues that we are bound by an "implied finding" that he did not request or consent to a particular period of delay, we examine the record for evidence to support the factual component of that conclusion (*e.g.*, whether a motion was filed and by whom, who said what at a hearing); to the extent that we must make a legal determination about who requested or consented to a particular period of delay, we make that determination independently. *See State v. Doak*, 235 Or App 351, 356, 213 P3d 1181, *rev den*, 349 Or 171 (2010) (whether historical facts amount to consent to a particular delay for purposes of ORS 135.747 is reviewed as a matter of law).

Here, for example, defendant argues that the state failed to prove that he moved for this setover. The only evidence in the record about this setover is a minute order that does not indicate who moved for the setover but does indicate that the setover was "charged" to the defense. Defendant argues that the trial court, in ruling on his motion to dismiss inferentially, if not explicitly, found that the state failed with that evidence to prove that the defendant, on the record, caused or expressly consented to that delay[.]" The trial court did not expressly make any fact findings related to that period of delay. To the extent that it is possible to infer that the trial court found that this setover was not granted on defendant's motion, such a finding is not supported by evidence in the record:

## 2. *Defendant's motion to suppress; defendant's subpoena duces tecum*

On June 3, 2008, the parties appeared for trial before Judge You.[2] The court first took up pretrial motions, including defendant's motion to suppress. In connection with the motion to suppress, the state called Harley. Defendant had served Harley with a subpoena *duces tecum* requiring him to bring documents, including his investigation report, all subpoenas issued to him to attend implied consent hearings and his record of compliance with those subpoenas for the previous 12 months, and all manuals upon which he had been trained to administer field sobriety tests. Harley brought his investigation report to the suppression hearing, but he did not bring any of the other subpoenaed documents. In connection with the training manuals that he had been asked to bring, Harley noted that one of the manuals was for training he had received in Maui and that the "subpoena didn't include a ticket back to Maui to pick up that manual." Harley explained that he had received the subpoena on the Friday before the Tuesday hearing, that he had not worked on the intervening days, and that he had showed the subpoena to his supervisor who had told him to send it to the Gresham City Attorney's office. Harley further explained that his office's court coordinator had not seen the second page of the subpoena, which requested the training manuals and materials related to implied consent subpoenas.

After defendant examined Harley about his failure to comply with the subpoena, he moved for a continuance. Judge You questioned the parties about when the subpoena was served and the relevance of the requested documents.[3]

---

the only evidence in the record supports a finding that defendant moved for this setover.

[2] Various proceedings in the trial court in this case were held before different judges. For clarity, we identify the judges presiding over each proceeding by name.

[3] Defendant explained that the training manuals would be relevant on cross-examination about how Harley had conducted the field sobriety tests on defendant. As to the implied consent subpoenas and records of compliance, defendant explained that he had a basis to believe that Harley had a practice of failing to comply with implied consent hearing subpoenas, and he argued that such a practice was relevant to show bias, citing *State v. Hubbard,* 297 Or 789, 801, 688 P2d 1311 (1984) (in a case that hinges on credibility of officer and

Defendant then restated his motion for a setover so that he could prepare a motion for an order to show cause why Harley should not be held in contempt for failing to comply with the subpoena *duces tecum*. Judge You granted defendant's motion and set the case over to July 1 for a continued hearing on the subpoena and any contempt motion or other motions to be filed by defendant.

At some time before July 1, 2008, defendant served subpoenas *duces tecum* on additional officers and staff of the Gresham Police Department in connection with his motion to suppress and his exploration of a possible contempt proceeding against Harley. On June 25, the City of Gresham moved to quash those subpoenas. At the July 1 hearing before Judge You, defendant, his attorney, a deputy district attorney,[4] Harley, his attorney, and an assistant city attorney for the City of Gresham were present. Judge You considered arguments regarding whether Harley had failed to comply with the subpoena *duces tecum* and whether the other subpoenas *duces tecum* should be quashed. At the time of the hearing, Harley had provided defendant with materials requested in his subpoena *duces tecum* to Harley, and defendant's attorney indicated that no additional documents needed to be provided in order to comply with the subpoena. Nonetheless, defendant's attorney wanted to question Harley and other police department witnesses about Harley's compliance with the subpoena and to determine whether there was a basis for pursuing contempt against Harley. For that reason, defendant asked that the motion to suppress hearing be continued to a later date and that consideration of the motions to quash his subpoenas to other police officers and staff be continued to that hearing.

Judge You ruled that Harley had complied with the subpoena *duces tecum*. Judge You declined defendant's request to continue the hearing on the motions to quash;

defendant, evidence of officer's knowledge of police department procedures for handling suspects and potential sanctions for violating those procedures tends to show that that the officer has an interest in testifying that he followed such procedures, whether or not the officer did so, and is therefore relevant to show bias or interest of the police officer witness).

[4] The deputy district attorney noted that he was "making a special appearance" because the City of Gresham was responding to the subpoenas and that he was participating in the arguments at the hearing on a limited basis.

she concluded that, because no contempt motion had been filed, the evidence sought by those subpoenas would not be relevant, and so she quashed them. Judge You then set the continued hearing on the motion to suppress for July 24.

### 3. *Defendant's contempt motion*

On July 15, 2008, defendant filed a motion asking the trial court to order Harley to appear at a hearing to show cause why he should not be held in contempt of court. Defendant asserted that Harley's failure to bring his training manuals with him to the June 3 hearing in compliance with the subpoena *duces tecum* constituted contempt of court as defined by ORS 33.015(2)(b). *See* ORS 33.015-33.145 (setting out contempt process). Relying on *State v. Burleson*, 342 Or 697, 160 P3d 624 (2007), the City of Gresham responded that Harley could not be found in contempt because the trial court had not ordered Harley to comply with the subpoena. The city further argued that Harley had not acted "willfully," as required for a finding of contempt under ORS 33.015(2). In reply, defendant argued that the city's reliance on *Burleson* was misplaced because *Burleson* applies only to grand jury subpoenas, not to subpoenas in pending criminal cases, and that he had demonstrated a *prima facie* case of contempt. The state did not file a response to defendant's contempt motion.

On July 24, 2008, the parties appeared before Judge You as scheduled for the continued hearing on defendant's motion to suppress; Harley's lawyer and an assistant city attorney for the City of Gresham also appeared. Judge You first took up defendant's contempt motion. Concluding that *Burleson* controlled, Judge You denied the motion for an order to show cause. The continued suppression hearing then went forward. At the close of evidence, Judge You took the matter under advisement and set the case for further proceedings and trial assignment before the Criminal Procedure Court (CPC) judge on August 19. The day before that hearing, Judge You issued an order denying defendant's motion to suppress.

4. *Defendant's motion for setover due to attorney's knee surgery*

On August 19, 2008, the parties appeared before the CPC judge, Judge Jones. Defendant moved for a setover because defendant's attorney was having knee replacement surgery. Defendant requested that the case be set for call on January 9, 2009, and trial on January 19, 2009. Defendant's attorney stated that his "client would waive any claim of denial of the statutory, Oregon constitutional, or federal constitutional claim of speedy trial denial" between August 19, 2008, and January 19, 2009. Defendant was present in the courtroom; when asked by the trial court if he understood the conversation, defendant indicated that he did; when asked by the court, "Any problem?" he replied, "No problems." Judge Jones granted the continuance.

5. *Defendant's petition for writ of mandamus to the Supreme Court in contempt proceeding*

Shortly after seeking that continuance, on September 9, 2008, defendant petitioned the Oregon Supreme Court for a writ of mandamus, asserting that the trial court should have issued an order requiring Harley to show cause why he should not be held in contempt. Although the Supreme Court issued an alternative writ on October 31, 2008, the trial court did not change its ruling. The mandamus action was briefed and argued to the Supreme Court and, on October 22, 2009, the court issued an opinion. *State v. McGee*, 347 Or 261, 220 P3d 50 (2009).

The Supreme Court concluded that *Burleson* did not prohibit the trial court from issuing an order requiring Harley to appear and answer in the contempt proceeding. While *Burleson* had held that a trial court must first order a witness to comply with a grand jury subpoena before imposing contempt sanctions, the court concluded that the reasoning of *Burleson* was specific to subpoenas to appear before a grand jury and did not apply more broadly to subpoenas in ongoing criminal proceedings. *Id.* at 270. The court expressly declined to direct the trial court to require

Harley to appear and answer the contempt proceeding. *Id.* at 271. The court observed, "[T]he trial court is not *required* to issue an order to appear and show cause, because there may be reasons that, although the motion and affidavit are in proper form, they do not satisfy legal requirements." *Id.* (emphasis in original). The court concluded that it was appropriate to remand the case to the trial court to reconsider the matter and determine, in the first instance, whether it should issue the order to show cause and, if it did, whether it should hold Harley in contempt. *Id.* On November 16, 2009, the Supreme Court issued a peremptory writ instructing the trial court to vacate its order denying defendant's motion for an order to show cause and directing the trial court to reconsider the motion.

### 6. *Defendant's motion for stay*

Meanwhile, on December 17, 2008, defendant had moved in the circuit court for a stay of the DUII case pending final disposition of the mandamus action. A hearing on defendant's motion was held before Judge Dailey on January 6, 2009. Defendant argued that, if the Supreme Court allowed the contempt proceeding to continue and if Harley was ultimately found in contempt, that contempt could be used to impeach Harley for bias, and so a stay of the DUII case during the mandamus action was appropriate. The state opposed the motion and argued that any contempt proceeding against Harley would not be relevant to the issues in the DUII case, and so the case should proceed to trial. Judge Dailey granted the motion for a stay, reasoning that, if Harley in fact did not bring documents to the suppression hearing because he did not want to be exposed to cross-examination on them, defendant would be entitled to question him on that issue and a possible finding of contempt could have a bearing on the case. Judge Dailey set the case for further proceedings before the CPC judge on April 15, 2009. On April 15, the mandamus action was still pending before the Supreme Court, and Judge Bergstrom set the case for further proceedings for a status report on December 22, 2009. Those proceedings were continued to January 27, 2010.

7. *Contempt proceeding after remand from the Supreme Court; defendant's continued arguments for stay*

On November 20, 2009, four days after the Supreme Court issued the peremptory writ, Judge You set a December 11 hearing on defendant's motion for an order to show cause why Harley should not be held in contempt. Judge You also signed an order withdrawing the August 21, 2008, order denying defendant's motion for an order to show cause and granting that motion. The order directed Harley to appear on December 11 to show cause why he should not be held in contempt. Accordingly, the court set both a hearing on defendant's motion for order to show cause *and* the show cause hearing itself for December 11. For reasons not clear from the record, that hearing date was continued to March 5, 2010.

Meanwhile, on January 27, 2010, further proceedings regarding the DUII case were held on the court's own motion before the CPC judge, Judge Hodson. At that time, the state had expressed speedy trial concerns. Judge Hodson observed that he understood that the stay granted by Judge Dailey had been for the duration of the mandamus action,[5] which had concluded, and indicated his intention to set the DUII case for trial. Defendant resisted setting the case for trial and urged that the stay remain in effect until the contempt proceeding was resolved before Judge You, arguing that the outcome of the contempt proceeding could affect his strategy at trial and the admissibility of evidence of bias. Judge Hodson did not set the case for trial, but set a further proceeding before the CPC on March 11, after the hearing scheduled for March 5 before Judge You regarding defendant's motion for an order for Harley to show cause why he should not be held in contempt.

On March 5, 2010, the parties, Harley's attorney, and an assistant city attorney for the City of Gresham appeared before Judge You. The court first took up defendant's motion

___

[5] That understanding was consistent with defendant's motion, which sought a stay "pending the final disposition of the mandamus action that is before the Oregon Supreme Court." The order granting the stay did not state that it was for the duration of the mandamus proceeding or beyond; instead, as noted, it set a date for further proceedings before the CPC judge. At the time of those further proceedings, the mandamus action was still pending. 255 Or App at 468.

to appoint counsel to prosecute punitive contempt, which had been filed on January 19, 2010.[6] Defendant argued that a punitive contempt proceeding was justified because, by not bringing materials to the suppression hearing, Harley had engaged in criminal activity, namely, evidence tampering. Judge You concluded that she could not say that remedial sanctions would not provide an effective alternative remedy, and so she denied the motion. The bulk of the hearing was spent discussing the effect of the Supreme Court's mandamus opinion and writ. The city, Harley's attorney, and the state argued that the Supreme Court had only ordered the trial court to reconsider defendant's motion for an order to show cause. Defendant, on the other hand, argued that the Supreme Court had ordered the trial court to hold a show cause hearing. Judge You took the matter under advisement and invited written submissions from the parties, Harley, and the City of Gresham, with the last filing due on March 22.

Immediately after that hearing, defendant and the state appeared before the CPC judge, Judge Hodson. Defendant continued to assert that a stay should remain in effect until the contempt matter was resolved and that the DUII case should not be set for trial. The state continued to express speedy trial concerns and objected to not setting the DUII case for trial. Judge Hodson cancelled the March 11 further proceedings date before the CPC judge and set a new CPC further proceedings date of April 29.

In response to Judge You's invitation, the parties filed various motions and other pleadings on the subject of how to proceed in light of the Supreme Court's mandamus opinion and peremptory writ. Defendant now conceded that the Supreme Court had only ordered the trial court to reconsider his motion for a show cause order and had not ordered it to hold a show cause hearing. Accordingly, all parties agreed that Judge You should vacate her November 20, 2009, order in which she withdrew her August 21, 2008, order denying defendant's motion to show cause and, instead, granted the motion. The parties differed on whether the court should hold a show cause hearing: both

---

[6] Defendant had previously sought only remedial contempt sanctions.

the city and Harley argued that, under ORS 33.055(5)(a), a trial court may, but is not required to, issue an order to show cause and hold a hearing in response to a motion for an order to show cause. Both further argued that, because there was no evidence that Harley had acted "willfully"—as required to establish contempt under the definition in ORS 33.015(2)—the court should not exercise its discretion to issue an order to show cause. Defendant argued that he had established a *prima facie* case for Harley's contempt and that the court should issue an order to show cause so that he could question the additional witnesses he had subpoenaed. He further argued that this case was a bellwether for future compliance by police officers with criminal subpoenas. He contended,

> "The manner in which this court addresses the *prima facie* case of contempt will serve as a signal about how this court, and other courts, will respond when a law enforcement officer disobeys the process of the court generally, and in Officer Harley's case, virtually continually, at least where DMV subpoenas are involved."

Also during this time, on March 24, 2010, defendant moved to strike two affidavits submitted by the city in support of its pleadings on the contempt issue. The city filed a response to that motion on April 6.

On April 23, 2010, the parties again appeared before Judge You. Judge You heard arguments on the parties' pleadings, took a short recess, and announced that she was issuing a written order—subsequently filed on April 26, 2010—that (1) vacated her November 20, 2009, order, which withdrew her August 21, 2008, order denying defendant's motion for an order to show cause and, instead, granted that motion; (2) denied defendant's motion for an order to show cause; and (3) denied as moot defendant's motion to strike the city's affidavits. In that written order, Judge You expressly stated that she was exercising her discretion under ORS 33.055(5)(a), "[i]n light of the circumstances, * * * to decline defendant's request for a hearing to show cause." She explained that those circumstances included that Harley had received the subpoena late in the day on a Friday, his last scheduled work day before a Tuesday

hearing, and accordingly had been unable to contact the city's legal department as his supervisor advised him to do; that Harley had brought some documents with him to the hearing, evidencing good faith; that the court must presume that an alleged contemnor acts in good faith; and that Harley ultimately had complied with the subpoena by providing additional materials to the defense before the next scheduled hearing. Judge You emphasized, both in open court and in her written order, that she did not consider the matter lightly and that she would not condone a willful failure to comply with a defense subpoena. In court, she remarked to Officer Harley that she was "disappointed" by his "flippant" response at the suppression hearing to defense counsel's question about training manuals and that his response did not sit well with the court, nor would it sit well with a jury.

Accordingly, the contempt proceeding was resolved when Judge You announced her ruling from the bench on April 23, 2010. As noted above, defendant had successfully pressed the CPC judge to continue the stay and not set a trial date in the DUII case until the contempt proceeding was resolved.

### 8. *Trial date set and continued*

Later that same day, April 23, 2010, the parties appeared before the CPC judge, Judge Bergstrom, on the DUII case. Judge Bergstrom cancelled the April 29 further proceedings date before the CPC judge and set a trial date of June 30, with a June 16 call. Three days later, on April 26, the parties again appeared before Judge Bergstrom in his capacity as CPC judge. Because "previous dates don't work for defense attorney and officer unavailable most of June," the trial was reset to July 14, with a July 2 call.

### 9. *Defendant's speedy trial motion*

On July 13, 2010, defendant filed a motion to dismiss on the ground that he had been denied his statutory right to a speedy trial, relying on ORS 135.747. Defendant calculated the entire period of delay as 27.5 months and argued that "[t]he state will not be able to point to any

portion of the record where \*\*\* defendant expressly consented to any delay in this case without suffering a 'loss in the quality of justice afforded' to him." (Quoting *State v. Davis*, 236 Or App 99, 110, 237 P3d 835 (2010).) Defendant recounted the numerous proceedings and periods of delay in this case; for most, he asserted, "[t]he defendant did not, on the record, move for or expressly consent to this delay." In connection with the setover that defendant sought on August 19, 2008, due to his attorney's knee replacement surgery, defendant conceded that he had "expressly consented" to that delay, but contended that the consent was "in error," because in *State v. Allen*, 234 Or App 243, 227 P3d 219 (2010), a case decided after that setover request, "defense counsel's 'inability' to participate in a trial [was] held to not [be] chargeable to the defense in the statutory speedy trial analysis." Defendant also argued that he could not be viewed as applying for or expressly consenting to delay by seeking a stay of the DUII case in circuit court pending the mandamus action.[7] Defendant argued that any such consent was "coerced," because, but for Harley's failure to comply with the subpoena *duces tecum*, the trial could have proceeded on June 3, 2008, as scheduled. Overall, defendant argued that he was, in essence, forced to pursue mandamus in order to preserve his right to prepare his case and cross-examine witnesses against him, and so the attendant delay could not be attributed to him.

Defendant further argued that the delay was not reasonable because the period of unrequested, unconsented delay was long; much of the delay was unjustified; and

[7] In his motion to dismiss, defendant characterized this motion for a stay as seeking a stay "until resolution of the mandamus proceeding and a resolution of \*\*\* defendant's contempt motion \*\*\*." Defendant's motion sought "a stay of the proceedings in this [circuit] court pending the final disposition of the mandamus action that is before the Oregon Supreme Court." At the hearing before Judge Bergstrom on January 27, 2010, Judge Bergstrom observed that initially the stay had been for the duration of the mandamus action. Although he did not extend the stay until the contempt proceeding was concluded, he did not proceed to schedule a trial date, but instead set further CPC proceedings for after the March 5, 2010, post-mandamus hearing before Judge You. Accordingly, although the case was not explicitly stayed after the Supreme Court issued its peremptory writ on November 6, 2009, we understand defendant's argument about why he did not request or consent to the period of delay while the case was stayed to extend to the period between January 6, 2009, when the stay was granted, and the entry of Judge You's order, *inter alia*, declining to issue a show cause order to Harley on April 26, 2010.

any justifications that did exist were weak. As to possible justifications for the delay, defendant contended that all the delay was ultimately traceable to Harley's misconduct, and Harley had no legal justification to disobey the subpoena *duces tecum*. He further contended that the City of Gresham was unjustified in making a "frivolous" argument in opposing his motion for an order to show cause why Harley should not be held in contempt. In addition, defendant argued that, by not informing the trial court or the Supreme Court that he agreed with defendant's legal position on the contempt motion, the district attorney "shirked his duty" and "turn[ed] control of this case to a lawyer [for the City of Gresham] who had no legal duty to assure that * * * defendant received a fair and impartial trial." Finally, defendant argued that the seven-month delay after the Supreme Court remanded the contempt proceeding was unjustified.

On July 14, 2010, the parties appeared as scheduled for trial before Judge Fuchs. The state orally presented its reasons for opposing defendant's motion to dismiss. Overall, the state observed that the speedy trial statutes are housekeeping provisions designed to assure that cases do not languish in the system. Here, the case was not languishing; there were no periods of unexplained delay. The state agreed with defendant that the total period of delay was 27.5 months. However, the state argued that defendant had applied for or consented to almost 24 months of that delay, including the delay following defendant's motion for an order to show cause why Harley should not be held in contempt. The state observed that in *State v. Fleetwood*, 186 Or App 305, 323, 63 P3d 42, *rev den*, 336 Or 125 (2003), we had concluded that a defendant "implicitly consented" to delay by filing a motion that required pretrial resolution. Similarly here, the state argued that the delay resulting from defendant's efforts to have Harley found in contempt was at defendant's application or with his consent. To the extent that Harley's failure to bring documents to the original hearing on defendant's motion to suppress could be considered a discovery violation, the state argued that, at most, only the 28-day period between that hearing (on June 3, 2008) and the next setting (July 1, 2008) should be counted against the state.

The state alternatively argued that, even if a greater amount of unrequested, unconsented delay was attributed to the state, the delay was reasonable in the circumstances of the case. In particular, the state noted that there were no periods of unexplained delay and that much of the delay was at defendant's instigation, including a long period when defendant pressed for a stay, over the state's objection, during which the state could not move the case forward. The state further noted that it had not itself sought any setovers and had objected to setovers sought by defendant. The state observed that defendant had the materials he had sought in the subpoena *duces tecum* within a month of the initial suppression hearing; after that, the state argued, pursuing contempt litigation,while staying the underlying DUII proceedings, was a tactical decision by defendant.

Judge Fuchs granted defendant's motion to dismiss. She noted that she looked at both the length of the delay and the reasons for it. Even accepting for purposes of argument that the time for the mandamus action was attributable to defendant, that left 392 days of delay, which exceeded expectations for bringing a misdemeanor case to trial. Accordingly, Judge Fuchs concluded that defendant's statutory right to a speedy trial had been violated and dismissed the case.

C.  *Identification of subsidiary periods of delay that defendant neither applied for or consented to; calculation of net period of delay attributable to the state*

On appeal, the parties primarily dispute whether defendant applied for or consented to particular subsidiary periods of delay in this case. The state argues that significant periods of delay—including the delay related to defense counsel's knee surgery and the delay associated with defendant's pursuit of contempt sanctions against Harley and related stays—should not be "attributed to the state." Defendant argues that he did not cause or expressly consent to any period of delay. We examine the periods of delay in this case to determine what periods defendant applied for or consented to and subtract them from the total period of delay.

1. *March 31, 2008 - May 28, 2008* (58 Days, Attributable to State)[8]

The state filed an information against defendant on March 31, 2008. The trial court subsequently set a trial date of May 28, 2008. Because there is no evidence that defendant applied for or consented to it, that period of delay is attributable to the state. *See, e.g., Allen*, 234 Or App at 254 ("[D]elays that a defendant did not apply for or consent to are attributable to the state.").

2. *May 28, 2008 - June 3, 2008* (6 Days, Attributable to Defendant)

At defendant's request, the May 28 trial was set over to June 3, 2008. Because defendant applied for that period of delay, it is attributable to him. *See, e.g., State v. Adams*, 339 Or 104, 110, 116 P3d 898 (2005) (subtracting period of delay where the defendant had requested setover); *State v. Stephens*, 252 Or App 400, 409, 287 P3d 1181 (2012) (same); *see also Glushko / Little*, 351 Or at 313-15 (citing with approval *State v. Chadwick*, 150 Or 645, 47 P2d 232 (1935), in which the Supreme Court excluded from its statutory speedy trial calculation the delays following the defendant's motions for continuance).

3. *June 3, 2008 - July 1, 2008* (28 Days, Attributable to State)

On June 3, 2008, at the pretrial hearing on defendant's motion to suppress, Harley failed to produce the subpoenaed documents. His actions necessitated a continuance, which Judge You granted to July 1, 2008; on July 1, Judge You ruled that Harley had complied with defendant's subpoena *duces tecum*. That period of delay is attributable to the state. *See Allen*, 234 Or App at 255 (where state's discovery violation necessitated continuance of omnibus hearing, the delay resulting from the continuance was attributable to the state).

Defendant contends that it is not enough to attribute to the state the period of delay between Harley's failure to comply with the subpoena *duces tecum* and the

---

[8] When calculating the length of the time periods, we exclude in any period the first date but include the last. See ORS 174.120(1); ORCP 10 A; ORAP 1.25(1).

point when there had been compliance with the subpoena *duces tecum*. Defendant contends that his subsequent actions in pursuing contempt sanctions against Harley and seeking stays in the underlying criminal proceeding were necessary in order to protect his ability to present his defense. Accordingly, in defendant's view, all of the delay until the contempt proceeding was finally resolved in April 2010 must be attributed to the state.

Defendant argues that he cannot be forced to give up one right—the right to a speedy trial—in exchange for another right—his right to present a defense. He argues that this case is like *Davis*, 236 Or App 99, in which, according to defendant, we rejected the state's argument that the defendant waived her statutory speedy trial right by opposing the state's motion to consolidate two unrelated cases involving the defendant. Here, too, defendant argues, he should not be required to give up his speedy trial right because he sought a fair trial including, in defendant's view, the documents he sought from Harley and a finding of contempt against him.

We accept that defendant's actions in this case were good-faith efforts to present a defense. Nonetheless, whenever a defendant in good faith seeks a setover, demurs to an indictment, moves to change venue, or moves to suppress evidence—actions that we or the Supreme Court have concluded led to delay that a defendant applied for or consented to—the defendant is taking that action in order to protect the defendant's ability to present his defense. *See, e.g., Adams*, 339 Or at 110 (setover); *State v. Robinson*, 217 Or 612, 624, 343 P2d 886 (1959) (demurrer); *State v. Crosby*, 217 Or 393, 405, 342 P2d 831 (1959) (demurrer); *State v. Stilwell*, 100 Or 637, 640, 198 P 559 (1921) (change of venue); *Fleetwood*, 186 Or App at 323 (motion to suppress); *State v. Robinson*, 3 Or App 200, 211-14, 473 P2d 152 (1970) (declining to reverse denial of dismissal on speedy trial grounds where the defendant had filed 14 motions requiring trial court action—including requests to hold the district attorney in contempt and a motion to suppress; noting that "the most substantial part of [the] delay * * * came about as a result of the defendant's motions, regardless of how

meritorious they were"). That a defendant is taking an action in order to present a defense does not change the fact that the defendant's actions will lead to delay or that, under ORS 135.747, such delay is delay that defendant applies for or consents to.

*Davis* is not to the contrary. In *Davis*, the defendant had been charged with several misdemeanors and, in another case, with felony charges proceeding from unrelated facts. The state moved to consolidate the charges, and the defendant opposed the motion because she wanted to testify in the misdemeanor case but stay silent in the felony case. The trial court denied the motion. The defendant later moved to dismiss for lack of a speedy trial. The state argued that the defendant could have had an earlier trial date if she had not opposed consolidation of the two cases. The trial court denied the motion, and the defendant was convicted. On appeal, she argued that her speedy trial motion should have been granted. We calculated the total period of delay in the case and subtracted several periods of delay that the defendant had requested. We then assessed whether the remaining 15-month delay was reasonable. We noted that the state had argued that the delay resulted from the coupling of the two cases and the defendant's opposition to their consolidation. 236 Or App at 110. We rejected the state's argument:

> "The state does not explain the rationale for linking the scheduling of conferences and trials in both cases. In the absence of any explanation, the state failed to show that any delay attributable to tracking both cases together was reasonable. Nor is any delay in bringing the misdemeanor case to trial justified because, as the state suggested below, 'the court must find two trial dates for her instead of just one.' Defendant should suffer no loss in the quality of justice afforded to her because she was charged in more than one case."

*Id.* In the absence of any other explanation for the delay, we held that the unjustified delay of 15 months was unreasonable. *Id.* at 111.

In *Davis*, the defendant had not filed pretrial motions or sought stays of her own case, she had merely

opposed actions by the state that could have had the side effect of an earlier trial date. We made no comment in *Davis* about whether, by filing motions that require pretrial resolution and requesting stays, a defendant applies for or consents to delay.

Accordingly, we proceed to examine each period of delay after Harley complied with defendant's subpoena *duces tecum* to determine which, if any, periods of delay defendant applied for or consented to.

4. *July 1, 2008 - July 24, 2008* (23 Days, Attributable to Defendant)

As noted, on July 1, 2008, Judge You ruled that Harley had complied with defendant's subpoena *duces tecum*. However, defendant requested that the suppression hearing be continued, and Judge You granted a setover to July 24, 2008. Because defendant applied for that delay, it is attributable to him.

5. *July 24, 2008 - August 19, 2008* (26 Days, Attributable to Defendant)

The parties appeared for the continued hearing on defendant's motion to suppress on July 24, 2008. At the close of the hearing, Judge You took the motion under advisement and set a further proceedings date of August 19, 2008. Judge You denied the motion on August 18, 2008.

As the Supreme Court recently reaffirmed in *Glushko / Little*, 351 Or at 313-15, by filing motions requiring pretrial resolution, a defendant applies for or consents to a reasonable period of trial delay under ORS 135.747. The court reviewed several cases illustrating that principle. In *Crosby* and *Robinson*, the defendants filed demurrers and later moved for dismissal on speedy trial grounds. In both cases, the Supreme Court observed that, by filing the demurrer, the defendant applied for or consented to a postponement for a reasonable period of time for the judge to consider and decide the motion. *Crosby*, 217 Or at 404-05; *Robinson*, 217 Or at 623-24. The *Glushko / Little* court suggested that, when a defendant files a motion requiring pretrial resolution, it is more appropriate to say that the defendant applied for

a postponement, instead of consented to one. However, as the court further noted, in either case, the time is excluded from the net delay under ORS 135.747. 351 Or at 313-14; *see also Fleetwood*, 186 Or App at 323 (concurring in trial court's assessment of delay in inquiry under ORS 135.747, including that the defendant had consented to delay when he filed a motion to suppress); *State v. Hampton*, 152 Or App 742, 746, 954 P2d 1267 (1998), *overruled on other grounds by State v. Garner*, 253 Or App 64, 289 P3d 351 (2012) (the defendant caused a postponement by filing a motion to suppress).

Defendant argues that filing motions requiring pretrial resolution does not constitute application for or consent to delay under ORS 135.747, relying on three cases. None of those cases supports defendant's argument. Two of the cases establish that a defendant's failure to object to a period of delay triggered by state or court action do not constitute a defendant's "consent" to delay under ORS 135.747. *Adams*, 339 Or at 109; *Allen*, 234 Or App at 254. However, those cases do not undercut the rule that reasonable delays to resolve a defendant's pretrial motions are attributable to the defendant. In *Hampton*, 152 Or App at 746, we noted that, although a defendant may cause a postponement for purposes of ORS 135.747 by moving to suppress evidence, that postponement includes only a reasonable time for consideration and decision of the motion. *Hampton* supports the proposition that, by filing a motion requiring pretrial delay, a defendant applies for or consents to delay for purposes of ORS 135.747; it also supports the proposition that such application or consent is not for unlimited delay, only reasonable delay.

Here, defendant filed a motion to suppress, a motion requiring pretrial resolution. Accordingly, under the analysis outlined in *Glushko/Little*, he applied for or consented to a reasonable time for a judge to decide the motion. Defendant does not contend, nor do we conclude, that the time that Judge You took to decide his motion was unreasonable. Accordingly, defendant applied for or consented to the delay between the date Judge You took the motion under advisement and the date—August 19, 2008—

she set for further proceedings following resolution of that motion.

6. *August 19, 2008 - January 19, 2009* (153 Days, Attributable to Defendant)

On August 19, 2008, the parties appeared before the CPC judge. Defendant moved to set the trial over to January 19, 2009, because his attorney was having knee surgery. Defendant's attorney expressly stated that his client would waive any claim of denial of statutory or constitutional speedy trial rights between August 19, 2008, and January 19, 2009. Defendant, who was present in the courtroom, ratified that statement.

As noted, when a defendant requests a trial setover, the defendant is considered to have applied for or consented to the resulting delay for purposes of ORS 135.747. Moreover, defendant concedes that he expressly waived his speedy trial rights in connection with this period of delay. Nonetheless, he now contends that his waiver was "mistaken" in light of our opinion in *Allen*, 234 Or App at 243. According to defendant, in *Allen*, we held that when defense counsel is "unable," as distinguished from "unwilling," to participate in a trial on a particular date, the resulting delay is not attributable to the defendant. Because his counsel's knee surgery made him unable, not unwilling, to participate in an earlier trial date, defendant contends that this period of delay should not be attributed to him.

Defendant's reliance on *Allen* is misplaced. In *Allen*, at an omnibus hearing, the state attempted to call a witness, but defendant objected because the state had not given him notice that the witness would be called. *Id.* at 247. Because the defendant's attorney was not available on any subsequent dates that could have allowed trial to proceed as scheduled, the trial was reset. *Id.* at 249-50, 253. We observed that "but for [the state's] discovery violation, there would have been no need to continue the omnibus hearing, creating a circumstance in which the only remaining * * * dates [that would have allowed the trial to proceed as scheduled] were ones on which defense counsel was unable to participate

because of prior commitments." *Id.* at 255. Thus in *Allen,* where the state triggered the need for a setover, we declined to attribute delay to defendant that was due to counsel's unavailability.

In *Allen,* the reason for the setover was the state's discovery violation. Here, the reason for the setover was defendant's request related to the medical unavailability of his counsel. Because defendant applied for that delay, it is attributable to him.

7. *January 19, 2009 - December 22, 2009* (337 Days, Attributable to Defendant)

Overlapping with some of the events in the underlying DUII case discussed above, defendant pursued contempt sanctions against Harley. Defendant initiated the contempt proceeding on July 15, 2008, by filing a motion for an order to show cause why Harley should not be held in contempt. As noted, when a defendant files a motion requiring pretrial resolution, he is deemed to have applied for or consented to a reasonable period of delay to consider and decide the motion. Here, however, the contempt proceeding could have proceeded in parallel with the underlying DUII case; it would have been possible for the criminal trial to go forward before the contempt proceeding had been concluded.

Nonetheless, beginning on December 17, 2008— before the scheduled January 19, 2009, DUII trial date— defendant sought stays of the DUII case pending resolution of the contempt proceeding, arguing that the outcome of the contempt proceeding would affect his strategy in the DUII trial. On December 17, 2008, defendant filed a motion seeking a stay in the DUII case pending final disposition of his petition for a writ of mandamus in the contempt proceeding. The trial court granted his motion and did not set the case for trial; instead, the court set the case for further proceedings before the CPC judge on April 15, 2009. On April 15, 2009, the mandamus action was still pending before the Supreme Court, and the trial court again did not set the case for trial; instead the court scheduled a December 22, 2009, "status report following oral argument in Oregon

Supreme Court on September 14, 2009."[9] Thus, from December 17, 2008, through December 22, 2009, the DUII case was stayed, at defendant's request, for the resolution of the mandamus action in the contempt proceeding. The Supreme Court issued a peremptory writ toward the end of that period, on November 16, 2009.

As when a defendant seeks a trial setover or files a motion requiring pretrial resolution, when a defendant seeks a stay of his prosecution, he applies for or consents to delay of the trial. *See Chadwick*, 150 Or at 649 ("If a defendant, in a criminal action, by dilatory motions or otherwise, postpones joining issue, he should not be heard to complain of any delay caused by his own action[.]"). Here, because defendant sought a stay of the DUII case pending resolution of the mandamus action in the contempt proceeding, he applied for or consented to the period of delay between December 17, 2008, and December 22, 2009. Defendant remonstrates, however, that—even if some of that delay is attributable to him—not all of it is, because resolution of the mandamus action took longer than necessary. For the reasons that follow, we disagree.

On September 9, 2008, defendant petitioned the Supreme Court for a writ of mandamus in connection with the denial of his motion for an order to show cause; the mandamus action concluded 14 months later when the Supreme Court issued its peremptory writ on November 16, 2009. Defendant contends that the resolution of the mandamus action took longer than necessary because the state did not appear in the mandamus action. Defendant posits that the legal arguments based on *Burleson*, 342 Or 967, raised by the City of Gresham in the mandamus action were "found to be frivolous." In defendant's view, because the state has a responsibility to assure fair proceedings for criminal defendants, had the state appeared in the mandamus action, it would have "conceded the error of Gresham's position [and] that would have significantly speeded up the briefing process [or] caused Gresham to withdraw from its position."

_____

[9] The record does not include a transcript of the CPC proceedings on April 15, 2009. Defendant does not argue that he withdrew his argument for a stay at that hearing.

We reject defendant's arguments as speculative. Although the Supreme Court rejected the city's legal arguments, it did not characterize them as frivolous. Moreover, we cannot draw from this record an inference that, if the state had a legal position on the issues in the mandamus action, that position would have been the one defendant identifies. Nor can we infer that, even if the state had filed a brief agreeing with defendant's argument, the Supreme Court would have resolved the mandamus action more quickly. The time taken to present, review, and decide the mandamus action was reasonable.

8. *December 22, 2009 - January 27, 2010* (36 Days, Attributable to the State)

As noted, the DUII case was stayed, pending resolution of the mandamus action, until December 22, 2009. It is not clear whether a status conference was held on that date; the record does not contain a transcript or any orders from that date. It appears that the DUII case was continued to January 27, 2010, for further proceedings in CPC. There is no evidence, however, that defendant applied for or consented to the period of delay between those two dates, and accordingly we must attribute it to the state.

9. *January 27, 2010 - April 23, 2010* (86 Days, Attributable to Defendant)

On January 27, 2010, the parties appeared before the CPC judge. Prior to that appearance, the state had already expressed speedy trial concerns. Defendant, however, resisted setting the case for trial and urged that the DUII case be stayed until the contempt proceeding was resolved, arguing that the outcome of the contempt proceeding could affect his strategy in the criminal trial. The trial court did not set the case for trial, but set further CPC proceedings after the scheduled contempt hearing before Judge You on March 5, 2010. As noted, on that date, Judge You took the matter under advisement and invited written submissions. Immediately after that hearing, the parties appeared before the CPC judge. Again, defendant asserted that the DUII case should not be set for trial but should be stayed until the contempt proceeding was resolved. The CPC judge did

not set the DUII case for trial but set a new CPC further proceedings date of April 29, 2010. Before that CPC further proceedings date, on April 23, 2010, Judge You announced from the bench that she was denying defendant's motion for an order to show cause why Harley should not be held in contempt. Accordingly, the contempt proceeding was resolved on April 23, 2010.

Here, because defendant sought a stay of the DUII case pending resolution of the contempt proceeding after the post-mandamus remand from the Supreme Court, he applied for or consented to the period of delay between when he first sought that stay on January 27, 2010, and the final resolution of the contempt proceeding on April 23, 2010.

10. *April 23, 2010 - June 30, 2010* (68 Days, Attributable to the State)

After the contempt proceeding was resolved on April 23, 2010, the trial court set a trial date of June 30. Because there is no evidence that defendant applied for or consented to that period of delay, we attribute it to the state.

11. *June 30, 2010 - July 14, 2010* (14 Days, Attributable to Defendant)

The trial court subsequently continued the trial date to July 14. There is no transcript of the proceeding in which that setover occurred. The trial court noted in its order continuing the trial that "previous dates don't work for defense attorney and officer unavailable most of June." The trial court indicated that this setover was "[c]harged to [the] defense." Although the setover may have accommodated the state's interest in having a witness available, it appears that defendant also sought the setover because of his attorney's unavailability. We conclude that defendant applied for or consented to the period of delay between June 30 and July 14, 2010.

To summarize, the following periods of delay are attributable to the state: (1) the period between indictment and first trial setting (58 days); (2) the period between the motion to suppress hearing where Harley failed to comply with defendant's subpoena and the subsequent hearing

on the subpoena, at which time Harley had complied with the subpoena (28 days); (3) the period between the stay for the mandamus action and subsequent CPC proceeding at which defendant successfully sought a stay for the contempt proceeding (36 days); (4) the period between the stay for the contempt proceeding and the June 30, 2010, trial date (68 days). On the other hand, the following periods of delay are attributable to defendant: (1) the period between first and second trial settings (6 days); (2) the period between the ruling that Harley had complied with defendant's subpoena *duces tecum* and the continued hearing on defendant's motion to suppress (23 days); (3) the period between the continued hearing on defendant's motion to suppress and the hearing following the trial court's denial of that motion (26 days); (4) the setover period that defendant requested due to his attorney's knee surgery (153 days); (5) the period during which defendant successfully sought a stay of the DUII case pending resolution of the mandamus action in the contempt proceeding (337 days); (6) the period during which defendant successfully sought a stay of the DUII case pending resolution of the contempt proceeding in the trial court (86 days); and (7) the period when trial was set over at least in part because of defendant's attorney's unavailability (14 days). Accordingly, of the total 835 days of delay in this case, 190 days are attributable to the state and 645 are attributable to defendant.

D. *Reasonableness of net period of delay attributable to the state*

We proceed to consider whether the net period of delay attributable to the state in this case—190 days or about 6 months—was reasonable. "There is no precise formula for determining whether a particular delay is reasonable." *State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). In order to decide whether delay is reasonable, we consider "all the attendant circumstances," particularly any circumstances that provide an explanation for particular periods of delay. *Glushko/Little*, 351 Or at 315-16. We have noted that "[d]elays due to discovery violations or the convenience of prosecutors weigh more heavily in the balance than do delays necessitated by,

for example, unforeseen illness of witnesses or unavoidable docket congestion." *Allen*, 234 Or App at 256.

As noted, defendant was charged on March 31, 2008, and the case was initially set for trial about two months later on May 28, 2008. That is not a period that falls outside the norm of acceptable court scheduling practices, and the record does not demonstrate that the case was languishing in the system during those two months. *See State v. Peterson*, 252 Or App 424, 433, 287 P3d 243 (2012) (delay that was the result of routine scheduling delays that are always present and occurred during continuing dialogue between the court and the parties was reasonable).

Defendant requested a setover of the May 28, 2008, trial date, and at the next date set for trial, June 3, 2008, Harley failed to comply with the subpoena *duces tecum*. As noted, the ensuing 28-day period of delay until Harley complied with the subpoena *duces tecum* counts against the state. Although it is the state's duty to work to comply with defense subpoenas, and although—like the trial court—we do not condone some of Harley's comments, the subpoena *duces tecum* was served on Harley with very little time to arrange to gather the documents, the number and kind of documents requested took time to locate and provide, and Harley provided the requested documents within an acceptable time frame. Although this one-month period counts more heavily against the state than those flowing from routine scheduling expectations, we do not conclude that it was unreasonable.

As noted, we attribute to defendant those periods of time during which he successfully argued that the DUII case should be stayed. Defendant obtained a stay of the DUII case pending the Supreme Court's resolution of the mandamus action in the contempt proceeding, from December 17, 2008, to December 22, 2009. The time between December 22, 2009, and January 27, 2010, during which the DUII case was set over for reasons that are not apparent from the record, is attributable to the state. Unexplained delay can count more heavily against the state when it appears that the case "slipped through the cracks." *See, e.g., State v. Ton*, 237 Or App 447, 453, 241 P3d 309 (2010) (eight-month period

of unexplained delay was unreasonable when case "sort of slip[ped] through the cracks"). Here, however, the period of unexplained delay was relatively short—a little more than a month—and there is no indication that this case was not being actively managed by the trial court or the state. *See State v. Turner*, 252 Or App 415, 422-23, 142 P3d 506 (2012) (one-month period of delay following the state's unexplained request for setover did not make total delay attributable to the state unreasonable). Moreover, the period of unexplained delay in this case occurs in the context of a relatively short period of total delay. In *State v. Peterson*, 183 Or App 571, 575, 577, 53 P3d 455 (2002), for example, we concluded a similar amount of total delay attributable to the state— seven months—was reasonable even though six months of that total were unexplained.

Finally, on the very same day that the contempt proceeding was resolved, April 23, 2010, the case was set for trial approximately two months later, on June 30, 2010. Again, that period is within the norm of acceptable court scheduling practices, and the record reflects that the court and the state were actively processing the case and moving it toward trial in a reasonable time frame.

In summary, defendant applied for or consented to 21.5 months of delay in this case, and the remaining six months of delay was not unreasonable. Therefore, the trial court erred in granting defendant's motion to dismiss for lack of a speedy trial under ORS 135.747.

Reversed and remanded.