338 March 7, 2013 No. 13

IN THE SUPREME COURT OF THE
STATE OF OREGON

Paul G. LINDELL, Jr.,
*Plaintiff-Relator*,

*v.*

Alex KALUGIN,
*Defendant*,
*and*

COUNTRYSIDE CONSTRUCTION, INC.,
an Oregon corporation,
*Defendant-Adverse Party*.

(CC CV10040946; SC S059437)

En Banc

Original proceeding in mandamus.*

Argued and submitted April 30, 2012; resubmitted January 7, 2013.

Helen C. Tompkins, Lake Oswego, argued the cause and filed the brief for plaintiff-relator.

Michael A. Lehner, Lehner & Rodrigues, P.C., Portland, argued the cause and filed the brief for defendant-adverse party.

Kathryn H. Clarke, Portland, argued the cause and filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Lindsey H. Hughes, Keating Jones Hughes, P.C., Portland, filed the brief for *amicus curiae* Oregon Association of Defense Counsel.

LANDAU, J.

The alternative writ of mandamus is dismissed.

---

* On petition for writ of mandamus from an order of Clackamas County Circuit Court, Roderick A. Boutin, Judge pro tempore.

**LANDAU, J.**

In this personal injury action, defendant Kalugin moved for a defense medical examination pursuant to ORCP 44 A. Plaintiff Lindell objected on the ground that he would not submit to such an examination without being allowed to bring a friend, family member, or counsel with him. The trial court declined to impose the discovery condition that Lindell requested. Lindell then petitioned this court for a writ of mandamus compelling the trial court to permit the examination only on condition that he be allowed to bring with him a friend, family member, or counsel. This court issued an alternative writ directing the trial court to permit Lindell to have legal counsel present as an observer at the examination or, in the alternative, to show cause for not doing so. In a letter opinion, the trial court respectfully informed this court that it would not modify its order and explained its reasoning for that conclusion. In response, Lindell now requests that this court enter a peremptory writ of mandamus requiring the trial court to allow a third-party observer. For the reasons that follow, we decline Lindell's request for a peremptory writ and dismiss the alternative writ of mandamus.

## I.   FACTS

A.  *Before the Trial Court*

The relevant facts are not in dispute. Lindell was injured when the vehicle that he had been driving was rear ended by a vehicle that Kalugin drove. Lindell initiated a personal injury action against Kalugin and his employer, Countryside Construction, Inc., owner of the vehicle that Kalugin was driving at the time of the accident. Lindell alleged that, as a result of the collision, he now suffers from amnesia, headaches, post-traumatic stress disorder, tinnitus, and an inability to focus on or track conversations.

During the pretrial discovery phase, Countryside arranged two defense medical examinations of Lindell, including a neuropsychological examination by Dr. Donna Wicher. Lindell asked that certain conditions be imposed on the conduct of the examination. One condition was:

"Paul Lindell is permitted to have a friend or family member present at the exam as an observer, so long as this person does not interfere with the examination. This observer will unobtrusively make an audio tape recording of the exam; plaintiff's counsel shall provide defense counsel with a copy of the recording upon request."

Countryside discussed the proposed condition with Dr. Wicher, who told Countryside that a neuropsychological evaluation "could not be performed under the condition[] suggested."

Because Lindell would not submit to the examination without the above-stated condition, Countryside moved to compel the examination pursuant to ORCP 44 A, which, as we describe in detail below, provides that a trial court may order a party to submit to a physical or mental examination when that party's physical or mental condition is in controversy. In response to the motion to compel, Lindell explained that he did not oppose submitting to the neuropsychological evaluation, so long as certain conditions were imposed. Specifically, Lindell asked the court to "include the unobtrusive presence of an observer, and a tape recording" as conditions of the examination. Lindell asserted that "[t]his is not only generally a good idea in order to provide independent documentation of what occurred during the examination but is essential in this case because of the nature of plaintiff's head injury and his vulnerability." Furthermore, he added, he

"has a constitutional right to counsel in this case arising from the U.S. Constitution and the Oregon Constitution. Art. I Section 10, Or. Constitution. [*sic*] That right requires that he be allowed to have an attorney or designee present as an observer and to make an audio or video (and audio) recording."

Attached as an exhibit to his response, Lindell provided a draft order that set out his proposed conditions of the medical examination. Those conditions included:

"6.   Paul Lindell is permitted to have * * * legal counsel or a friend or family member present at the exam as an

observer, so long as this person is unobtrusive and does not interfere with the examination.

"7. The observer may unobtrusively make an audio and/or video recording of the exam; plaintiff's counsel shall provide defense counsel with a copy of the recording upon request."

Countryside opposed the imposition of the requested conditions. It submitted to the court a letter from Dr. Laurence M. Binder, a clinical professor of neurology and psychiatry at Oregon Health and Science University and one of plaintiff's own consulting doctors, who summarized his personal views and the views of the National Academy of Neuropsychology and the American Academy of Clinical Neuropsychology on the subject of allowing observers or audiotaping of independent examinations. In brief, Binder explained that "[o]ur profession strongly opposes observation by third parties or audiotaping of exams because of two concerns." First, he explained that third-party observation or audiorecording "is incompatible with maintenance of test security." According to Binder, the validity of many neuropsychological tests depends on the examinee not being familiar with them and thus not being able to prepare for them. Second, he explained that the presence of observers or audiorecording affects test performance. According to Binder, "peer-reviewed, published research has demonstrated that people tested with observers present or with an audiotape recorder running perform worse on neuropsychological tests than people tested without observers or taping." Countryside also submitted a published article by Dr. Richard Kolbell, Chair of the Ethics Committee of the Oregon Psychological Association, which likewise opposed the presence of observers or audiorecording of examinations, on both practical and ethical grounds. The article concluded with a statement of the Oregon Psychology Association opposing the presence of third-party observers in neuropsychological examinations. The statement asserts that, "[t]he use of a third party observer during a forensic psychological and/or neuropsychological evaluation does not meet an acceptable standard of practice and is not permissible under current professional and ethical standards."

After a hearing, the trial court granted Countryside's motion to compel, but declined imposing the two foregoing conditions. The court explained that "[t]he practice of this court is [to] deny the accompaniment of an observer, and the recording of the examination, in the absence of circumstances that make an exception to that general rule necessary for a fair examination. I am not persuaded that such circumstances exist here."

B.  *Mandamus Proceeding*

Lindell petitioned this court for a writ of mandamus "compelling the trial court to enter an Order adequately protecting plaintiff and plaintiff's access to counsel in his personal injury case by ordering that he may bring an observer and/or he may audio or videotape the examination." In his memorandum in support of the petition, Lindell asserted that the trial court erred in failing to impose the requested conditions because it "shift[ed] the allocated burden of proof in ORCP 44 A away from the defendant to show 'good cause' for the examination" and because the trial court "either declined to exercise [discretion] to establish conditions for the examination" or "abused its discretion by failing to provide adequate and reasonable protections for a brain-injured plaintiff attending a defense psychological examination." He argued that he had no adequate remedy at law, as his "right to counsel in the adversarial proceeding of a defense medical examination under ORCP 44 A *** cannot be vindicated by a subsequent appeal."

This court issued an alternative writ of mandamus, instructing the trial court to

"enter an order permitting plaintiff Lindell to have legal counsel present as an observer at the ORCP [44] examination of plaintiff, under the condition that legal counsel is unobtrusive and does not interfere with the examination except as necessary to protect the legal interests of plaintiff Lindell or, in the alternative, to show cause for not doing so."

In response, the trial court adhered to its decision not to permit Lindell to have a third party attend the examination. In a four-page, single-spaced letter opinion, the court

detailed the parties' contentions about the need for the requested condition on conducting the examination. The court explained:

> "ORCP 44 examinations are not intended to be adversarial. They are intended to be professional examinations conducted by professionals in accord with the high standards and practices of their profession. Notwithstanding, experience teaches that professionals do, on occasion, stray from those high standards and allow their judgment to be colored by other influences. This is the stuff of cross examination and the wisdom of the jury.

> "The issue for this court is, what conditions are necessary to protect the interests of both the plaintiff and the defendant, for both are entitled to a process that is as fair as possible. Just as a plaintiff may complain that an unaccompanied examination may put him or her at a disadvantage, a defendant may complain that allowing anyone to observe an examination necessarily influences the accuracy and outcome of the examination."

The court acknowledged that Lindell "has a brain injury, that he wears hearing aids and that he has tinnitus." Nevertheless, the court commented, the evidence that Lindell submitted "does not say that his cognitive functioning is such, or that his hearing impairment is such, that he is unable to present for a neuropsychological examination." The court acknowledged Lindell's contention that he is "emotionally fragile." Still, the court stated, the evidence "does not say that Mr. Lindell cannot meaningfully present for an ORCP 44 examination."

The trial court also noted that it had heard from Lindell that the presence of counsel is necessary because the particular physician whom Countryside had selected to conduct the examination "appears cold and unsympathetic and acts skeptical" and that the doctor has the reputation for being a defense advocate. The trial court responded:

> "The court desire[s] to craft a litigation path that is as fair and balanced to all parties as is possible. The plaintiff is entitled to be as free from harassment, intrusion, embarrassment, discomfort, and a host of other adjectives, as possible. The defense is entitled to know Mr. Lindell for

who he is. Overlaying all that is what appears to be the true issue—the plaintiff objects to Dr. Wicher.

"It is unclear to me what is to be gained by having one of Mr. Lindell's lawyers observe, and not unnecessarily intrude in, the examination by Dr. Wicher[.] If the purpose is to improve Mr. Lindell's mood, or help him answer questions, then the examination is by design flawed. If the purpose is to be able to critique the examination, will that lawyer be obliged to make notes of his or her observations? To disclose those notes? To be subject to deposition? Permitted to testify at trial, either as a fact or impeachment witness? If to critique the tests done or questions asked, and the results and answers obtained, does the lawyer need a minimum amount of training in the examiner's field of expertise?"

The trial court concluded that, in the end, Lindell simply had not demonstrated good cause for the requested condition on the conduct of the examination.

Lindell now requests that this court enter a peremptory writ, requiring the trial court to allow either "a friend, family member[,] or attorney with him to the defense psychological examination." He frames his argument in terms of three assignments of error. First, he argues that "[t]he trial court erred in adopting a presumption" against the conditions that he sought. Second, he argues that "[t]he trial court erred when it refused to exercise its discretion to fashion" a remedy that would have protected him adequately during the examination. Third, he argues that, "[t]he trial court erred in refusing to enter an order complying with this court's alternative writ."

The narrowness of the issues before us bears some emphasis. Lindell does not argue that he has a constitutional right to the presence of counsel during the examination. He does not mention any provision of the state or federal constitution in his petition for a writ of mandamus or any supporting memoranda. Nor does he cite any case for the proposition that he is entitled, as a matter of law, to the presence of counsel *qua* counsel during a defense medical examination. As we have noted, before the trial court, he did mention—briefly—a constitutional right to counsel. Even

then, the only relief that he requested was that the court permit "legal counsel or a friend" to attend the examination.

At all events, a constitutional right to counsel is not a matter that he pursues before this court. His only argument now is that he "should be permitted to either bring a third party observer or to record the examination" because doing so "is sound policy and warranted on the facts of this record." He contends that "a third party observer or a recording is necessary to guarantee the fairness" of the examination. That third party, he argues, could be "a friend, family member or attorney." His argument in that regard is predicated solely on ORCP 44 A and what he contends is the trial court's erroneous interpretation and application of it.[1]

*Amicus curiae* Oregon Trial Lawyers Association (OTLA) even more explicitly takes the position that the issue is not whether Lindell has a right to the assistance of counsel during a defense medical examination. OTLA notes that the alternative writ mentioned only the presence of legal counsel, but then states that OTLA

> "finds it difficult to analyze the question as so strictly confined. *** [T]he examinee may have concerns best *** addressed by something other than the presence of counsel. OTLA believes that neither the questions presented to the trial court by the litigants here, nor the analysis necessary to answer them, can be restricted to the presence of the examinee's attorney."

Like Lindell, OTLA focuses instead on the question whether the trial court erred in failing to permit a third-party observer, who "could be the examinee's attorney or could be a family member or a friend." Accordingly, we confine our opinion to those matters and do not address the legal issue whether a plaintiff in a personal injury action has a constitutional right to the presence of counsel at a defense medical examination.

---

[1] Lindell also argues that, if we are not inclined to require the presence of a third party, we should order the trial court to permit him to audiorecord the examination. The alternative writ, however, did not say anything about requiring the court to permit a recording of the examination. We confine ourselves to the only issue set out in the alternative writ and express no opinion about whether the court abused its discretion in failing to allow Lindell to audiorecord the examination.

## II.  ANALYSIS

Mandamus is "an extraordinary remedy" and serves a limited function. *Sexson v. Merten*, 291 Or 441, 445, 631 P2d 1367 (1981). It is a statutory remedy aimed at correcting errors of law for which there is no other "plain, speedy and adequate remedy in the ordinary course of the law." ORS 34.110. Importantly, as this court has stated many times, "[i]t has become hornbook law in this state that the writ of mandamus cannot be used as a means of controlling judicial discretion." *State ex rel. Ricco v. Biggs*, 198 Or 413, 422, 255 P2d 1055 (1953); *see also State ex rel Douglas County v. Sanders*, 294 Or 195, 198 n 6, 655 P2d 175 (1982) ("Mandamus is not available to review the exercise of trial court discretion."). Only if the trial court's decision amounts to "fundamental legal error" or is "outside the permissible range of discretionary choices" will the remedy of mandamus lie. *State ex rel Keisling v. Norblad*, 317 Or 615, 623, 860 P2d 241 (1993).

At issue in this case is whether the trial court committed such fundamental legal error or made a decision outside the permissible range of discretionary choices in interpreting and applying ORCP 44 A, which provides, in part:

> "When the mental or physical condition or the blood relationship of a party \*\*\* is in controversy, the court may order the party to submit to a physical or mental examination by a physician or a mental examination by a psychologist or to produce for examination the person in such party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

Lindell's first contention is that the trial court erred as a matter of law in interpreting that rule to create a "presumption" against imposing the condition that he requested. As we understand it, Lindell asserts that, under ORCP 44 A, the examinee has no burden to establish anything with respect to a requested condition; rather, the

burden rests with the party requesting the examination to establish the unreasonableness of any such requested conditions. Beyond that bare assertion in his brief, Lindell has supplied no supporting explanation or argument concerning the nature of the trial court's asserted error. Nor has he provided any explanation for why he believes that ORCP 44 A imposes a burden on a defendant to establish the unreasonableness of any condition that a plaintiff requests. He simply notes that the trial court's order in this case is inconsistent with trial court orders in other cases in other circuits.

OTLA proposes an argument in support of Lindell's position. In OTLA's view, certain requested conditions should be regarded as "presumptively appropriate," given the "adversarial" and "inherently intimidating" nature of a defense medical examination. Those presumptively appropriate conditions include "the presence of an observer" during the examination. OTLA acknowledges that, for most forms of discovery, the Oregon rules require a showing of good cause before a court may impose conditions on discovery. Nevertheless, it argues, because of the unique phrasing of ORCP 44 A, a different allocation of the burden of persuasion should apply. Specifically, OTLA notes that ORCP 44 A allows a trial court to order a medical examination only upon a showing of "good cause" by the party requesting the examination. OTLA further notes that the rule says nothing one way or the other about who bears the burden of persuasion concerning the necessity of any conditions on the examination. Under the circumstances, OTLA reasons, it seems to follow that the party who bears the burden of establishing good cause for the examination should also bear the burden of establishing a lack of good cause for any conditions on that examination.

Countryside responds that OTLA's argument is contrary to settled principles about the proper allocation of the burden of persuasion as to a fact or issue. It further argues that OTLA's argument is contrary to this court's decision in *Pemberton v. Bennett*, 234 Or 285, 289, 381 P2d 705 (1963), in which the court upheld the trial court's refusal to allow counsel to attend a defense medical examination

precisely because the plaintiff in that case had failed to establish why the presence of counsel was necessary.

To determine the meaning of ORCP 44 A, we apply the precepts that ordinarily apply to the interpretation of statutes and rules. *A.G. v. Guitron*, 351 Or 465, 471, 268 P3d 589 (2011) (applying those principles to ORCP 44 B and C).[2] In accordance with those ordinary principles of construction, we examine the text of the rule in its context, along with any adoption history that we find relevant. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Case law existing at the time of the adoption of the rule or its predecessor forms part of the context of the rule. *Guitron*, 351 Or at 471; *SAIF v. Walker*, 330 Or 102, 108-09, 996 P2d 979 (2000).

We begin with the text of the rule. ORCP 44 A plainly provides that the party seeking an order compelling another party to submit to a mental or physical examination must establish "good cause" for the order. The rule requires that the order "specify the time, place, manner, conditions, and scope of the examination," but—as all parties acknowledge—it does not expressly impose a burden on anyone in particular to establish the reasonableness of those conditions.

Ordinarily, the party seeking relief bears the burden of persuasion. *See* OEC 305 ("A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."). Thus, it would seem to follow that, if the party requesting the examination also requests certain conditions, that party must establish good cause for those conditions. Likewise, if the examinee

---

[2] It may be argued that, to the extent that any of the Oregon Rules of Civil Procedure were not actually adopted or amended by the legislature, they are not themselves statutes. *Cf. Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001) (only if a rule of civil procedure was amended or adopted by the legislature is the proper focus the intentions of the legislature). We need not address that issue in this case because, as we note below, ORCP 44 A was, in fact, amended by the legislature. Moreover, the same basic principles apply to the interpretation of both statutes and rules. *See, e.g.*, *State v. Hogevoll*, 348 Or 104, 109, 228 P3d 569 (2010) ("In construing an administrative rule, we apply the same analytical framework that applies to the construction of statutes."); *Tye v. McFetridge*, 342 Or 61, 69, 149 P3d 1111 (2006) ("In interpreting an administrative rule * * * our task is the same as that involved in determining the meaning of a statute, which is to discern the meaning of the words used, giving effect to the intent of the body that promulgated the rule.").

requests conditions on the examination, then that party must establish good cause for those conditions.

Consistently with that ordinary allocation of the burden of persuasion, the Oregon Rules of Civil Procedure provide that any party who wishes to impose conditions on discovery may do so by means of a motion for a protective order under ORCP 36. That rule, which expressly applies to "physical and mental examinations," ORCP 36 A, provides that the party seeking an order "that discovery may be had only on specified terms and conditions" must establish "good cause" for those conditions. ORCP 36 C.

Thus, taken together, ORCP 44 A and 36 C suggest that, if an examinee wishes the court to order that a third party be present at a physical or mental examination or that any other limitation or condition be placed on such discovery, it is the examinee's burden to establish good cause for such a limitation or condition.

The context of those rules, as they were developed over the years, bears out that interpretation. As we explained in *Guitron*, 351 Or at 471, this court recognized the inherent authority of trial courts to order a plaintiff to submit to an examination by medical experts in *Carnine v. Tibbets*, 158 Or 21, 27, 74 P2d 974 (1937). In *Pemberton*, the court addressed the scope of that inherent authority as it applied to case facts nearly identical to those before us now. 234 Or at 286. The plaintiff had initiated an action against the defendants for personal injuries. The defendants moved for an order requiring the plaintiff to submit to a physical examination by a physician selected by the defendants. The plaintiff arrived at the examination with her attorney, but the physician refused to make the examination in the presence of the attorney. The matter was taken up by the trial court. The plaintiff offered no evidence. That is to say, the plaintiff offered "nothing to indicate in what way [she] believed her physical examination out of the presence of her attorney would be or was prejudicial." *Id.* at 286. The trial court ordered the plaintiff to submit to the examination without being accompanied by her attorney. On appeal, the plaintiff assigned error to the trial court's ruling. This court affirmed.

The court first held that the question whether counsel may be present at a compelled medical examination is a matter "largely within the discretion of the trial court." *Id*. at 287. The court acknowledged that it could be argued that counsel had a right to be present "at all times to advise his client in any matter affecting the lawsuit." *Id*. at 288. The court noted that it also could be argued that "a medical examination is not an occasion when the assistance of counsel is normally necessary." *Id*. The court suggested that "[t]he presence of an attorney in an examination would probably tend to prolong the examination and could create an atmosphere in which it would be difficult to determine the examinee's true reactions." *Id*. Still, the court observed,

> "there are certain occasions when the trial court might determine that the attorney's presence at all or part of an examination is a reasonable request. The examinee, the examiner, the nature of the proposed examination or the nature of the medical problem,—these factors, separately or collectively could cause the trial court to condition the examination upon the attorney being permitted to be present at all or part of the examination."

*Id*. at 288-89. The key was whether the plaintiff established a basis on which the trial court could determine that the presence of counsel was reasonably necessary. The court noted that no such record existed in that case:

> "In the instant case, no reason was advanced why it was desirable or necessary that the attorney for the plaintiff be present at the examination. The trial court had no basis for determining whether or not the examination should be conducted with or without the presence of plaintiff's counsel. This assignment of error is found to be groundless."

*Id.* at 289.

Thus, at least before the adoption of ORCP 44 A and 36, the law was clear that whether counsel could be present during a compelled medical examination was a matter committed to the discretion of the trial court and depended on whether the party seeking the condition established the reasonable necessity of that condition.

Meanwhile, the Federal Rules of Civil Procedure were adopted. Those rules often have served as models for

state rules of civil procedure, and that was later to be the case for Oregon's rules. Federal Rule of Civil Procedure 35(a)—originally adopted in 1937 and amended in 1970—provided:

> "When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

FRCP 35(a) (1970).

Federal courts construing and applying that rule have concluded that counsel may attend a physical or mental examination, if at all, only upon a showing of good cause. *See, e.g.*, *Warrick v. Brode*, 46 FRD 427, 427 (D Del 1969) ("The examination authorized by Rule 35, while providing for protective devices, does not provide for the presence of counsel."); *Dziwanoski v. Ocean Carriers Corp.*, 26 FRD 595, 598 (D Md 1960) ("The presence of the lawyer *** is not ordinarily either necessary or proper; it should be permitted only on application to the court showing good reason therefor."). According to the federal court decisions, the requirement that a party demonstrate good cause for such conditions on the examination derived from Federal Rule 26(c), which provided that any party may request a protective order to limit the scope of discovery for good cause.

In 1973, the Oregon State Bar Committee on Practice and Procedure drafted House Bill (HB) 2101 (1973), which, among other things, codified the authority of the trial court to order a party to attend a physical or mental examination. Section 1 of that bill provided:

> "In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, the court in which the action

is pending may order the person claiming to be injured to submit to a physical or mental examination by a physician employed by the moving party. The order may be made only on motion for good cause shown and upon notice to the persons to be examined and to all parties. The motion and order shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

Or Laws 1973, ch 136, § 1.

There is little legislative history about that section; most of the attention devoted to HB 2101 involved other sections of the bill that required the production of the examining physician's report. *See generally Guitron*, 351 Or at 474-78 (detailing legislative history of other provisions of HB 2101). David Landis, however, who was a member of the Bar committee that drafted the bill, did explain to the House Judiciary Committee that the phrasing of section 1 was modeled after Federal Rule of Civil Procedure 35(a) and was intended to "merely codify existing case law." Minutes, House Judiciary Subcommittee #2, HB 2101, Feb 12, 1973 (statement of David Landis). Likewise, Austin Crowe, another member of the bar committee, explained to the Senate Committee on Judiciary that "section 1 tries to codify the existing state law." Minutes, Senate Committee on Judiciary, HB 2101, May 2, 1973 (statement of Austin Crowe). The legislature ultimately adopted the bill without amendment, and it was codified at ORS 44.610 (1973).

In 1978, the Council on Court Procedures adopted the Oregon Rules of Civil Procedure, including what is now ORCP 44 A. As adopted by the council, the rule provided:

"When the mental or physical condition (including blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in such party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

The rule, plainly modeled on the wording of Federal Rule 35(a), thus extended a trial court's authority to order an examination not just in personal injury actions, but in any case in which the mental or physical condition of a party is in controversy. Under ORS 1.735, those rules became effective on January 1, 1979, unless the legislature amended, repealed, or supplemented them. As it happens, the legislature did amend slightly the wording of the rule as adopted by the council, but none of those amendments pertain to the issues in this case. *See Guitron*, 351 Or at 478-79 n 11 (detailing 1979 legislative amendments). After adopting those changes, the legislature repealed ORS 44.610. Or Laws 1979, ch 284, § 199.

The council's commentary to the rules sheds little light on ORCP 44 A. Once again, the majority of the discussion concerned other issues—in particular, the production of physician examination reports. But the commentary does make clear that the text of ORCP 44 A "comes from the federal rule." Comment, Discovery Committee Draft Rules, Council on Court Procedures, Dec 2, 1978, 57.

At the same time, the council adopted ORCP 36, which was also based on a federal rule—specifically, Federal Rule 26. ORCP 36 A first sets out a general rule of discovery by various methods, including "physical and mental examinations." ORCP 36 C then provides that any party may, "for good cause shown," seek an order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." That order may include a requirement "that discovery may be had only on specified terms and conditions." *Id.*

At the time that the council adopted, and the legislature amended, ORCP 44 A, the federal courts uniformly continued to allow counsel or other third parties to attend an examination, if at all, only on a showing of good cause pursuant to FRCP 26(c). *See, e.g.*, *Sanden v. Mayo Clinic*, 495 F2d 221, 225 (8th Cir 1974) (trial court did not abuse its discretion in refusing to allow third party to attend medical examination because plaintiff failed to establish good cause); *Brandenburg v. El Al Israel Airlines*, 79 FRD 543, 546 (SDNY 1978) (party's contention of right

to counsel at a Rule 35 examination was "frivolous"). Indeed, to this day, federal courts generally prohibit counsel from attending the examination. *See generally* James C. Francis IV and Robert M. Bloom, 7 *Moore's Federal Practice* § 35.08[1] at 35-35 (3d ed 2009) ("Because the presence of the examinee's attorney may inhibit the examiner and also create the possibility that the attorney will become a trial witness, courts generally prohibit counsel for the party to be examined from attending the examination.").

To summarize: Both ORS 44.610 and ORCP 44 A were intended to "codify existing case law," which at the time held that a trial court exercising its inherent authority to compel a medical examination had the discretion to impose conditions on the examination only if the party seeking the conditions established good cause for them. Moreover, the wording of both ORS 44.610 and ORCP 44 A was based on the wording of Federal Rule 35(a), a rule that federal courts at the time consistently construed to impose a burden on the examinee seeking to impose conditions on a compelled physical or mental examination to show good cause for those conditions.

As a general rule, when the Oregon legislature borrows wording from a statute originating in another jurisdiction, there is a presumption that the legislature borrowed controlling case law interpreting the statute along with it. *Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608 (1997); *Fleischhaer v. Bilsted et al, Gray et ux*, 233 Or 578, 585, 379 P2d 880 (1963). In this case, the federal case law, although not including decisions of the United States Supreme Court, nevertheless was consistent at the time that the Oregon legislature adopted ORS 44.610 and ORCP 44 A, and, indeed, remains consistent to this day. Under the circumstances, it seems appropriate to regard the federal court decisions as at least highly persuasive as to the intentions of the Oregon legislature in borrowing from the federal rules. *See, e.g.*, *BRS, Inc. v. Dickerson*, 278 Or 269, 275, 563 P2d 723 (1977) ("'When one state borrows a statute from another state, the interpretation of the borrowed statute by the courts of the earlier enacting state

ordinarily is persuasive.'") (quoting *State ex rel Western Seed v. Campbell*, 250 Or 262, 270-71, 442 P2d 215 (1968)).

OTLA does not contest that the federal cases consistently hold that it is the examinee who bears the burden of demonstrating good cause for a requested condition on a physical or mental examination. Nevertheless, it argues that we should reject them, because they are based on a "somewhat wistful outlook on compelled medical examinations." OTLA suggests that we should instead be persuaded by the more realistic reasoning of courts from other states that have recognized the adversarial nature of compelled examinations and presume that an examinee may be accompanied by counsel or a designated third person or that a record of the examination be required.

OTLA misperceives the nature of the issue before us, which is not a matter of this court's view—"wistful," "realistic," or otherwise—of the real nature of compelled medical examinations. The issue before us is solely one of interpretation, guided by the rules that we have described. *See Holien v. Sears, Roebuck and Co.*, 298 Or 76, 95-96, 689 P2d 1292 (1984) ("The responsibility of this court is to apply and interpret the law, not to assume the role of a legislative chamber.").

As for the decisions of other state courts that OTLA offers, we note that the courts' decisions are based on their interpretations of differently worded rules—rules that expressly recognize a right of a party to be accompanied by counsel or other persons. *See, e.g.*, *Langfeldt-Haaland v. Saupe Enters., Inc.*, 768 P2d 1144, 1147 (Alaska 1989) (state constitution gives plaintiff the right to the presence of counsel during a mental examination); *Vinson v. Superior Court*, 43 Cal 3d 833, 846, 740 P2d 404 (1987) (state statute provides the right to presence of counsel at physical examination); *Boswell v. Schultz*, 175 P3d 390, 393 (Okla 2007) (state rule expressly permits presence of observer at examination). Others have adopted the view that OTLA proposes without reference to any rule at all. *See, e.g.*, *Parsons v. Hytech Tool & Die*, 661 NYS2d 362, 362, 241 A2d 936 (1997). Oregon's rules are different and do not permit the interpretation that OTLA advocates.

In short, we reject Lindell's and OTLA's contention that ORCP 44 A imposes on the party seeking a physical or mental examination the burden of proving that conditions that are requested by the examinee are unreasonable. The burden rests with the examinee to establish that any requested limitations or conditions on discovery are supported by good cause. In this case, therefore, the trial court did not commit a fundamental legal error in requiring Lindell to establish good cause for his request that he be permitted to have a third party accompany him during the compelled medical examination.

Lindell's remaining contentions are that the trial court either "refused to exercise its discretion" to order that the examination proceed only on the condition that a third party be present or that the court "abused its discretion" when it failed to order that condition. In evaluating those contentions, we are mindful of the extraordinary nature of the remedy of mandamus and that the scope of our review is limited to determining whether the trial court's decision was "outside the permissible range of discretionary choices open" to it. *State v. Burleson*, 342 Or 697, 702, 160 P3d 624 (2007).

Lindell, in arguing that the trial court either refused to exercise discretion or abused its discretion, notes that the court, at least in its initial decision, simply relied on the "practice" of the court to deny requests for conditions on medical examinations in the absence of a showing of necessity. In a similar vein, it could be argued that the trial court's letter opinion in response to the alternative writ similarly set the bar too high in mentioning the fact that Lindell failed to establish the absolute "necessity" of the presence of a third party at the examination. But, in a mandamus proceeding, we are limited to deciding whether the trial court committed clear error. In this case, the trial court's opinion also included an evaluation of the evidence offered by both parties and an attempt to arrive at a decision that took into consideration both the reasons for Lindell's request and Countryside's concerns in opposing it.

Specifically, the trial court acknowledged the serious nature of Lindell's injuries and their effect on his ability to

hear, to remember details, and to handle stressful situations. The court noted that Lindell is "entitled to be as free from harassment [and] discomfort" as much as is possible. At the same time, the court noted Countryside's evidence that allowing a third party to observe the examination "necessarily influences the accuracy and outcome of the examination" and that Countryside is "entitled to know Mr. Lindell for who he is," not who he is in the presence of a friend, family member, or attorney. We cannot ignore those aspects of the trial court's opinion in our analysis.

The trial court's ultimate decision to deny Lindell's request to require the presence of a third party at the examination may be one about which reasonable persons could disagree. But, in this mandamus proceeding, we cannot say that the court failed to exercise its discretion or that it exercised its discretion in a manner that was outside the range of choices that the law permits.

Lindell insists that, given the evidence that his injuries left him vulnerable and given the fact that the examining physician has a reputation for being "unsympathetic," we should conclude that the trial court's denial of his request for the presence of a third party during the examination was, in fact, outside the legally permissible range of choices available under ORCP 44 A. If that were the only evidence in the record, Lindell might have a point. He neglects, however, to take into account the uncontested evidence that Countryside offered. Given that record, the trial court could perhaps have ruled either way on Lindell's request. But we cannot say that the law permitted the court one, and only one, conclusion.

The alternative writ of mandamus is dismissed.